[No. 3873.]

## EUSTACE TRENOR *v.* THE CENTRAL PACIFIC RAILROAD COMPANY.

IRRELEVANT TESTIMONY.—In an action brought by a physician and surgeon to recover for the value of his professional services in attending upon persons wounded in a railroad collision, and placed in a private hospital, evidence on behalf of the defendant, of the usual and customary charge in this State for all necessary medical and other attendance upon patients in hospitals received for treatment for wounds, is irrelevant.

CHALLENGE OF JUROR FOR ACTUAL BIAS.—The decision of the Court upon the challenge of a juror for actual bias, if erroneous, is not an error of law, but an erroneous finding of fact.

IDEM.—Such decision, if not final, and if subject to review, can only be reviewed on the ground that the evidence is insufficient to sustain it, and the Court will not, except in the clearest case, interfere with it.

INSUFFICIENCY OF EVIDENCE TO SUSTAIN A VERDICT.—If there is some evidence to sustain a verdict, it will not be disturbed on the ground of the insufficiency of the evidence to support it.

SEVERAL ACTION ON JOINT CONTRACT.—If a contract is made with two persons jointly, and one of them sues on it as a several contract with him, the defendant cannot take advantage of the non-joinder of the other party to the contract, unless he pleads it.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

On the 14th day of November, 1869, the plaintiff and Joseph C. Tucker were keeping a private asylum for insane persons, at the town of Alameda, county of Alameda, and on the morning of that day a locomotive and train of cars of the Western Pacific Railroad Company, going east, collided with a locomotive and train of cars of the San Francisco and Alameda Railroad Company, going west, at a point about two miles from the asylum. The plaintiff and Dr. Tucker were partners in keeping the asylum. Many persons were wounded by the collision, and the same day fourteen of the wounded were carried to the asylum. After the collision, the Western Pacific Railroad Company consolidated with the Central Pacific Railroad Company under the name of the Central Pacific Railroad Company. The plaintiff averred in his complaint that the Western Pacific Railroad Company requested him, as a physician and surgeon, to attend, prescribe for, and treat the wounded persons at the asylum, and that in pursuance of the request he did so, and that the value of his services was five thousand dollars. The answer merely denied the allegations of the complaint. The case was tried before a jury. After eight jurors had been called and examined under oath as to their qualifications, D. S. Schulte was called as a juror, when the following questions were propounded by the defendant's counsel, and answered:

"Have you got any prejudice or prepossession one way or the other?" The juror answered: "I do not fancy the railroad company much;" and thereupon the following interrogatories were put and answers given, to wit:

By Mr. Doyle:

Q. "Because they run opposition to carriages?"

A. "No, their general conduct."

By Mr. Crane:

Q. "Have you a prejudice against this company?"

A. "Well, I suppose I have a little."

Q. "What has it arisen out of; these public controversies we have had here?"

A. "I presume so."

Q. "If this case were submitted to you, could you give a fair and just verdict upon the evidence without reference to this prejudice you have?"

A. "I think I could."

Q. "Would you start in with any presumption against the railroad company in making up your verdict?"

A. "I do not know about that."

Q. "Would it require evidence to remove any prejudice you have on the start?"

A. "Yes, sir."

By the Court:

Q. "Is that anything more than this little excitement or controversy in the papers got up by the Committee of One Hundred?"

A. "That has formed the opinion, I presume."

Q. "That is, it was their opinion you relied upon, and not your own, was it?"

A. "Well, I formed my opinion from what I have read in the papers in connection with that, that is all."

By Mr. Doyle:

Q. "The question is, whether it is any opinion about this case?"

A. "I never heard of this case."

Mr. Crane to the Court:

"The gentleman said it would require evidence in this case to remove the prejudice he had to start with."

By the Court:

"I did not understand so. The gentleman's prejudice was against the Committee of One Hundred. But you may examine him further."

By Mr. Crane to the juror:

Q. "In this case, would it require evidence to remove any prejudice that you have got against the company before you could make up your mind upon the merits of this case?"

A. "I do not think it would."

Q. "If the evidence was evenly balanced, would you be inclined to go against the company on account of the prejudice you have now against them?"

A. "No, sir."

Q. "What is the character of the prejudice you have?"

A. "I think if they could get the best of anybody else they would do it."

Q. "In this case, do you think they would get the best of this plaintiff if they could?"

A. "Yes, sir."

Q. "Don't you think it would affect your verdict in this case, this prejudice you have against the company?"

A. "It might if it was perfectly even-balanced; it might affect it a little."

By Mr. Doyle:

Q. "Does this prejudice that you speak of extend to anything in connection with the facts of this case?"

A. "No, sir."

Q. "Does it tend to make you think that the company owes or does not owe money in any particular instance?"

A. "No."

Q. "Your verdict in this case, I take it, would depend upon what the evidence in this case was as to the indebtedness, whether they did owe him money, and how much it was, without reference to the prejudice you have against them, which is of a general character?"

A. "Exactly."

By Mr. Doyle:

"I should hope, sir, as a member of the Committee of One Hundred, that that committee should not be charged with this prejudice."

By the Court:

"That committee ruined the business here for a whole year, and it is not strange that it has produced that preju-

dice. It is conceded that the business of the city has been ruined by the Committee of One Hundred. I understand you challenged the juror for cause."

By Mr. Crane:

"We challenge him for actual bias."

The court found the challenge not true, and the defendant excepted.

The defendant peremptorily challenged Mr. Schulte, and exhausted all of its challenges before twelve jurors were impaneled.

Soon after the collision, the plaintiff was informed by Dr. Wm. P. Gibbons that the wounded were on their way to the asylum, and made arrangements at once to receive them. Several of them remained at the asylum until January, 1870. The plaintiff testified that Dr. Gibbons told him he had been sent by A. A. Cohen, who wished him to take the wounded into the asylum, and that the next day Cohen spoke to him about the matter, and told him to give the wounded men every possible care and attention, both professionally and by way of nursing, and that the railroad company had put all the wounded men under the supervision of himself and Dr. Gibbons, and that they looked to them as responsible for their proper treatment. That in pursuance of this request, he left his residence and stayed at the asylum twenty-five or thirty days, and that he attended on the wounded as surgeon and physician while they remained at the asylum. He further testified that, in the latter part of November, he saw Leland Stanford, the president of the railroad company, at his office in San Francisco, and told him that at the request of Cohen and Harvey Brown, who represented themselves as agents of the railroad company, he had treated the wounded men professionally, but that he preferred that the railroad company should assume the responsibility in writing. That Mr. Stanford replied that he was doing just right, and the railroad company wished him to continue his treatment, and the company would pay all expenses; and that the company had put the whole affair in the hands of A. A. Cohen, who would supply him with money, but that the company would not become responsible in writing.

The plaintiff further testified that he had, before he visited Mr. Stanford, prepared a letter to be signed by Mr. Stanford, of which the following is a copy:

"SAN FRANCISCO, Nov. 26th, 1869.

"DRS. W. P. GIBBONS AND E. TRENOR,
        "Alameda.

"GENTLEMEN: On the 14th day of the present month, you were requested by Alfred A. Cohen, Esq., to take charge of those wounded that morning by the collision between the Alameda and Western Pacific Railroad trains, to have them received into the Alameda Park Asylum, and to see that they there had proper medical and surgical care, and were well kept and nursed. You were further instructed by Mr. Cohen, that in carrying out the above objects, you were, if possible, to make the injured as contented and comfortable at the asylum as if they were in their own homes, and to spare no pains or expense to secure that end; also that each wounded man should be allowed to select such physician or surgeon as he might prefer to attend him. You were to exercise general supervision over the treatment, maintenance and nursing, and in your intercourse with the patients to make a point of protecting the interests of the railroad company, and to do what lay in you to predispose the injured to be reasonable in their demands upon the company for compensation for their injuries.

"The above instructions of Mr. Cohen are hereby indorsed by the Western Pacific Railroad Company as coming from the company, and agreeably therewith you are requested to see that the same good offices for the injured and the railroad company are continued as long as may be necessary, the railroad company to pay the expenses."

That Mr. Stanford refused to sign the letter. The defendant claimed that the plaintiff was not employed as surgeon and physician, but that the plaintiff and Tucker were merely engaged to receive the patients into their asylum and give them care and nursing, and introduced testimony tending to prove this fact.

The defendant called as a witness Dr. A. B. Nixon, who

testified that he had been for twenty years a practicing physician and surgeon, and had charge of the defendant's hospital at Sacramento, which was a private institution, built by and belonging to the company, but which received paying patients, and that he was familiar with the charges made for hospital attendance and for the care of patients in hospitals in this State. The counsel for the defendant then asked the witness this question: "What is the usual and customary charge in this State for all necessary attendance, medical and other, to patients in hospitals, received for treatment for wounds arising, for instance, from a railway collision?"

The plaintiff's counsel objected to the question, and the court sustained the objection, and the defendant's counsel excepted.

Trenor & Tucker had commenced an action against the defendant for receiving the wounded into their asylum and supplying them with nurses, medicine, food, etc., which action was pending when this suit was tried.

The plaintiff had a verdict and judgment. The defendant appealed.

The other facts are stated in the opinion and the dissenting opinion.

*R. Robinson and McCullough & Boyd and S. W. Sanderson,* for the Appellant.

The court erred in not sustaining the challenge for actual bias, to the juror D. S. Schulte. The state of this juror's mind evinced enmity and bias against the defendant. (Code of C. P., Sec. 602, Subd. 7; *People* v. *Keyes,* 5 Cal. 349; *White* v. *Moses,* 11 Cal. 68; *People* v. *Weil,* 40 Cal. 268; *Baker* v. *Harris,* 1 Winston (N. C.); *March* v. *Portsmouth R. Co.,* 19 N. H. 375; *McLaren* v. *Birdsong et al.,* 24 Geo. 269; *Crippen* v. *The People,* 8 Mich. 117.)

The court erred in excluding the question propounded to Dr. Nixon. (*Clark* v. *Baird,* 9 N. Y. 184; *Swan* v. *Middlesex Co.,* 101 Mass. 173; *Brackett* v. *Edgerton,* 14 Minn. 174.)

*Doyle & Barber*, for the Respondent.

No error was committed in disposing of the challenge to the juror D. S. Schulte. It was for "actual bias." (Sec. 602, subdivision 7 of the Code of Civ. Proc.) The issue was tried by the court sitting as a trier, and the challenge "found not true." That verdict, as the finding of a competent tribunal on an issue of fact submitted to it, is conclusive. No such thing as an exception lies to it. It is a verdict on a question of fact, not a ruling on one of law. At common law there was a challenge to the polls "for principal cause," and "for favor." The first of these is designated in our Criminal Practice Act, and is commonly known as implied bias, and the second as actual bias. Principal cause, or implied bias, was some cause which, in judgment of law, was an absolute disqualification, such as consanguinity, interest in the action, or the expression of an unqualified opinion, from any of which partiality was a legal inference. This challenge was tried by the court. The challenge "for favor," or actual bias, was based on the allegation that actual bias existed, and it was to be proved; the usual evidence in support of it was proof of some facts tending to render the juror partial, and from which bias or prejudice might be inferred, such as friendship, intimacy, resentment, ill-will, etc. Upon this challenge bias was not presumed by law, as in the case of one for "principal cause," but the question was submitted to triers, who were to find, as matter of fact, whether the juror stood indifferent between the parties or not, and their decision was of course final. There was no appeal except for error of law, in the admission or exclusion of evidence before them. (*Smith* v. *Floyd*, 18 Barb. 522; *People* v. *Freeman*, 4 Denio, 334; *People* v. *Vermilyea*, 6 Cowen, 555; same case on appeal, 7 Cowen, 108; *Merchants' Bank* v. *Smith*, 19 John. 121; 1 Payne & Duer's Prac. 518–19; Graham's Prac. 306.)

The question to Nixon was irrelevant. The action is on a *quantum meruit*, for medical and surgical services alone. Hospital rates for board, lodging, nursing and medical attendance, called for by those questions, would furnish no

criterion whereby to measure the value of the plaintiff's professional services.

By the Court, RHODES, J.:

Upon the issue as to whether the defendant employed the plaintiff to render professional services as a physician and surgeon in the treatment of the persons injured by the collision, or only to take and receive such persons into the asylum, the evidence is conflicting; and the verdict, therefore, will not be disturbed on the ground of the insufficiency of the evidence to sustain the finding on that issue.

The court did not err in excluding the questions propounded to Dr. Nixon, as they did not relate to the value of services of the character of those charged in the complaint.

The defendant challenged Schulte for actual bias, and the challenge was disallowed, and it is now urged that the court erred in that respect. The question presented for determination by a challenge for actual bias is a question of fact, and the decision of the question, if the court comes to the wrong conclusion upon the evidence, is not an error of law, but an erroneous finding of a fact.

And we are inclined to the opinion, though we do not expressly so hold, that the decision is final, and not subject to review either on motion for a new trial or on appeal. But, however that may be, if the decision is subject to review, it is only on the ground that the evidence is insufficient to sustain it. This Court would not, except in the clearest case, interfere with the decision, for the determination of the court below is based more largely than in ordinary questions in litigation, upon the bearing, manner, appearance, etc., of the juror while giving his testimony. We see nothing in this case which requires us to disturb the decision of the court below that Schulte was a competent juror.

There was evidence in the case tending to prove that Cohen, assuming to act as the agent of the railroad company, employed the plaintiff to render his professional services in the treatment of the persons injured by the col-

lision, and that the president of the railroad company was apprised of the action of Cohen and ratified it, and continued him as such agent in that behalf, and this Court cannot say that the evidence was insufficient to justify the jury in finding a ratification by the railroad company of the contract made in its behalf by Cohen.

We see nothing in the charge of the court, or the instructions given or refused, of which the defendant can complain as productive of any injury to it.

Judgment and order affirmed.

McKINSTRY, J., concurring:

I concur. The non-joinder of W. P. Gibbons as a party plaintiff, was not specially pleaded by the defendant, and the non-joinder was consequently waived. (*Gillem* v. *Ligman*, 29 Cal. 637; *Rutenburg* v. *Main*, 47 Cal. 214.) There is certainly evidence tending to show that the contract was made with the plaintiff and Gibbons; the point, therefore, that it was made with Gibbons alone is not well taken.

WALLACE, C. J., dissenting:

The action is for the recovery of compensation for services rendered by plaintiff as a physician and surgeon, about the curing and treatment of certain persons wounded in a railroad collision, and which he alleges were rendered at the request and for account of the defendant. The pleadings are not verified, and the answer of the defendant puts in issue all the allegations of the complaint. Upon the trial the plaintiff had judgment, and the defendant having been refused a new trial brings the present appeal. The contract sued upon is several; the claim is based in pleading entirely upon the alleged employment of the plaintiff, and not upon the employment of the plaintiff in conjunction with any other person. The court below accordingly instructed the jury that if the contract was made with Dr. Gibbons and the plaintiff jointly, then the plaintiff could not recover in this action, because he has " declared on a several, and not a joint contract." One of the grounds relied upon by the defendant for a new trial is as follows:

"There is no evidence that the plaintiff was employed by the defendant as a physician or surgeon separately and independently from an employment of Dr. William P. Gibbons and plaintiff jointly." The plaintiff testified upon the point as follows: "All the wounded men were put under the general supervision of Dr. William P. Gibbons and myself. We were held responsible for the treatment of them by the other physicians and also those whom we attended. Dr. William P. Gibbons, I believe, was employed to attend to all of the patients just as I was myself, but he did not see them so frequently, because he resided out of the asylum. * * * On the day after the accident, when I met Mr. Cohen, he told me to give the wounded men every possible care and attention, both professionally and by the way of nursing—that is, furnishing them with necessaries; and he said that the railroad company put all the wounded men under the supervision of Dr. William P. Gibbons and myself, and that they looked to us as responsible for their proper treatment, and the services which I rendered were in pursuance of this request of Cohen in behalf of the company. Dr. Gibbons also gave his attendance at the asylum, in attending and supervising the wounded." The railroad collision occurred on the 4th of November, 1869, and it appeared, on cross-examination of the plaintiff, that in the latter part of that month the plaintiff, at an interview with the president of the railroad corporation, defendant here, presented to the president a letter prepared by the plaintiff concerning the medical attendance upon the wounded, and which letter was addressed to "Dr. W. P. Gibbons and E. Trenor" as having been jointly employed in the business. The evidence for the plaintiff all points to the conclusion that the plaintiff was employed jointly with Dr. Gibbons; there is not the slightest conflict upon the point which I have been able to discover; the note of November 26, addressed to Stanford by the plaintiff, signed jointly by the plaintiff and W. P. Gibbons (by plaintiff), establishes clearly, that up to that time the several employment of the plaintiff had not been thought of by the latter.

In my judgment it is no answer in this case to say that the non-joinder of Gibbons was waived because it was not relied upon in pleading. The court below instructed the jury, without reference to the omission to plead the non-joinder; that such non-joinder was fatal to the plaintiff's case. It is settled here that when an instruction, even incorrect in point of law, is given by the trial court, it is the duty of the jury, in their deliberations, to observe it, and that if they disregard it there must be a new trial. (*Emerson* v. *The County of Santa Clara*, 40 Cal. 543.)

I am, therefore, of opinion that the judgment should be reversed.