### AUSTIN *v.* SELIGMAN and others.

*(Circuit Court, S. D. New York.* November 5, 1883.)

1. PLEADINGS—BAILMENT, WHAT IS NOT—ASSUMPSIT—WHEN ACTION IN, MAY BE MAINTAINED BY A THIRD PERSON.

    Under the rules of pleadings which obtain in the courts of New York, if the complaint sets forth a cause of action, either in tort or *assumpsit,* it is sufficient, and the plaintiff will recover such a judgment as the facts warrant, irrespective of the form of his action.

2. BAILMENT.

    When, by the terms of the contract under which property is delivered by an owner to another, the latter is under no obligation to return the specific property either in its identical form, or in some other form in which its identity may be traced, but is authorized to substitute something else in its place, either money or some other equivalent, the transaction is not a bailment, but is a sale or exchange.

3. ASSUMPSIT—ACTION BY THIRD PERSON.

    Although the subject is one of much controversy, the result of the better considered decisions is that a third person may enforce a contract made by others

for his benefit, whenever it is manifest, from the nature or terms of the agreement, that the parties intended to treat him as the person primarily interested. See *Hendrick* v. *Lindsay*, 93 U. S. 143; *Nat. Bank* v. *Grand Lodge*, 98 U. S. 123.

4. SAME.

Where a copartnership transfers its assets to a purchaser, and the only interest of the plaintiff is that of a creditor at large of the selling partners, such creditor has no lien for his debts upon the partnership assets, except in cases of insolvency or administration.

Demurrer to Complaint.

*North, Ward & Wagstaff*, for plaintiff.

*Bettens & Lilienthal*, for defendants.

WALLACE, J. The complaint demurred to alleges that some time prior to April 15, 1883, the plaintiff delivered to the firm of Kempt & Co. certain jeweler's sweepings, to be refined, of the value of $4,292, and agreed to pay that firm for refining the sweepings the sum of $320; that by the terms of the agreement between them the sweepings were to be refined, "and the product thereof delivered to or accounted for, and the value thereof, less the agreed price for refining the same, paid to the plaintiff within 20 days from the delivery thereof." The complaint further alleges that on the thirtieth day of April, 1883, the firm of Kempt & Co. transferred and delivered all the property at the refining works of the firm, including the aforesaid sweepings, to the defendants, upon the agreement and undertaking that the defendants should "fully pay and discharge all the debts, obligations, and liabilities of Kempt & Co." The complaint then avers that 20 days have elapsed since the delivery of the sweepings to Kempt & Co., and, although the plaintiffs have demanded of them and of the defendants the return of the sweepings, or, in default thereof, the delivery of the product or the value, upon payment of the agreed price for refining the same, that defendants and the said firm of Kempt & Co. have neglected and refused to comply with the demand.

Under the rules of pleading which obtain in the courts of this state, if the complaint sets forth a cause of action, either in tort or in *assumpsit*, it is sufficient, and the plaintiff will recover such a judgment as the facts warrant, irrespective of the form of this action. It is urged for the plaintiff that he can maintain either trover or *assumpsit* upon the facts alleged. If the delivery of the sweepings was a bailment, trover is an appropriate remedy, because the title to the property remained in the plaintiff, and a demand and a refusal to return it to him by the defendants is sufficient evidence of a conversion, whether defendants were innocent purchasers or otherwise. But the rule is well settled that when, by the terms by the contract under which property is delivered by an owner to another, the latter is under no obligation to return the specific property either in its identical form or in some other form in which its identity may be traced, but is authorized to substitute something else in its place, either money or some other equivalent, the transaction is not a bailment, but is a sale or exchange.

Here the agreement was that Kempt & Co. should return the refined product of the sweepings or account for the value thereof, less the price for refining. They had an option which was inconsistent with the character of a bailment. *Hurd* v. *West*, 7 Cow. 752; *Smith* v. *Clark*, 21 Wend. 83; *Foster* v. *Pettibone*, 7 N. Y. 433; *Buffum* v. *Merry*, 3 Mason, 478; *Chase* v. *Washburn*, 1 Ohio St. 244; *Ewing* v. *French*, 1 Blackf. 353; Schouler, Bailm. 5. The case is not one where they had possession of the plaintiff's property under an executory agreement to purchase, but one where the title passed on delivery, unless the delivery was a bailment. It was not a bailment if they had a right to return money in its place.

Unless the plaintiff can recover in *assumpsit* upon the promise made by the defendants to Kempt & Co. to assume all the debts, obligations, and liabilities of the latter, the complaint fails to show a cause of action. He was not a party to the contract, nor did its consideration move from him, and there is nothing in its terms to indicate that it was intended to be made for his benefit. The case thus presents the much-vexed question as to the right of a third person to maintain *assumpsit* upon a contract which may inure to his benefit, but to which he is not a part. It is stated in 1 Hil. Cont. 425, that "the cases on this subject are very discordant, the earliest decisions holding that such action cannot be maintained, many succeeding cases in England holding the contrary, and some American cases of high authority tending strongly to restore the old doctrine." The subject has been recently somewhat considered in two cases in the supreme court of the United States. Mr. Justice DAVIS, delivering the opinion of the court in *Hendrick* v. *Lindsay*, 93 U. S. 143, says:

"The right of a party to maintain *assumpsit* on a promise not under seal made to another for his benefit, although much controverted, is now the prevailing rule in this country."

Mr. Justice STRONG, delivering the opinion of the court in *Nat. Bank* v. *Grand Lodge*, 98 U. S. 123, says:

"We do not propose to enter at large upon a consideration of the inquiry how far privity of contract between a plaintiff and defendant is necessary to the maintenance of the action of *assumpsit*. The subject has been much debated, and the decisions are not at all reconcilable. No doubt the general rule is that such privity must exist. Undoubtedly there are many exceptions to it. * * * But where a debt already exists from one person to another, a promise by a third person to pay such debt being primarily for the benefit of the original debtor, and to relieve him from liability to pay it, (there being no novation,) he has a right of action against the promisor for his own indemnity; and if the original creditor can also sue, the promisor would be liable to separate actions, and therefore the rule is that the original creditor cannot sue. His case is not an exception from the general rule that privity of contract is required."

There are adjudications which hold broadly that in a case like the present, where one party assumes to pay all the debts of the other, a creditor of the promisee may maintain *assumpsit* against the prom-

isor. · Such a case is *Joslin* v. *New Jersey Cars Co.* 36 N. J. Law, 14. There are others which hold that where the promisor undertakes to pay certain specified creditors or debts of the promisee the creditor can maintain suit against the promisor. Such a case is *Brown* v. *Curran*, 14 Hun, 260. Other cases decide that although, by the agreement, one of the parties undertakes in general terms to assume or pay all the debts of the other, if the agreement appears to be primarily intended for the benefit of the promisee he is the only person who can recover upon the promise. *Nat. Bank* v. *Grand Lodge*, 98 U. S. 123; *Dow* v. *Clark*, 7 Gray, 198; *Merrill* v. *Green*, 55 N. Y. 270; *Pardee* v. *Treat*, 82 N. Y. 385.

It will not be profitable to attempt to collate the authorities upon the general question. In England it is now distinctly established, so far as any common-law right of action is concerned, that a third person cannot sue on a contract made by others for his benefit, even if the contracting parties have agreed that he may, (Poll. Cont. 196,) while in both Massachusetts and New York the later decisions limit more strictly the exceptions to the general rule that the person must sue to whom the promise is made. Neither in these decisions, nor elsewhere in this country, has the English rule been recognized. It has the merit of simplicity, but is artificial instead of being reasonable. According to good sense and upon principle there is no reason why a person may not maintain an action upon a contract, although not a party to it, when the parties to the contract intend that he may do so. The formal or immediate parties to a contract are not always the persons who have the most substantial interest in its performance. Sometimes a third person is exclusively interested in its fulfillment. If the parties choose to treat him as the primary party in interest, they recognize him as a privy in fact to the consideration and promise. And the result of the better-considered decisions is that a third person may enforce a contract made by others for his benefit, whenever it is manifest from the nature or terms of the agreement that the parties intended to treat him as the person primarily interested. The cases of *Hendrick* v. *Lindsay* and *Nat. Bank* v. *Grand Lodge*, and the expressions in the opinions, do not antagonize upon this proposition, but accord with it. The language of FOLGER, J., in *Simson* v. *Brown*, 68 N. Y. 355, may be adopted as a correct and accurate statement of the law, as follows:

"It is not every promise made by one to another, from the performance of which a benefit may inure to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit *as its object*, and he must be the party intended to be benefited."

There is a class of cases where, under a contract between two persons, property has come to the hands of one of them, which in equity is charged with a lien or trust in favor of a third person, in which the latter may sue in his own name upon the promise to discharge

the lien or assume the trust.    These cases have no proper application to a case like the present, where a copartnership transfers its assets to a purchaser, and the only interest of the plaintiff is that of a creditor at large of the selling partners.    Such creditors have no lien for their debts, upon the partnership assets, except in cases of insolvency or administration.    Colly. Partn. § 894; Story, Partn. §§ 358, 360; *Crippen* v. *Hudson,* 13 N. Y. 161.    If upon such a transfer the purchaser assumes to pay certain specified creditors or certain enumerated debts of the seller, it may be fairly urged that the parties contemplate a direct liability to the specified creditor on the part of the purchaser.    On the other hand, when the agreement is silent respecting any specific obligation to be assumed to a third person, the natural inference is that it was intended primarily for the benefit of the promisee, and to adjust the rights and duties of the parties as between themselves.

Applying this criterion to the case in hand, the plaintiff cannot maintain *assumpsit* upon the agreement set forth, because there is no recognition in it of any liability to him, and nothing to indicate that any claim of his was present to the contemplation of the parties.

The demurrer is sustained.

--------

The third point in the head-notes to the case given above involves a question of profound interest both in its legal and ethical relations.    On its face it is apparently technical, being whether a person not a party to a contract can maintain a suit upon it.    But the principle that underlies it is of far wider operation.    It is whether it is not essential to a contract that it should be entered into by two agreeing parties.    That it is not is maintained by the case in the text, and by a preponderance of American authority.    That it is so essential is maintained by the English courts, and by the courts of Massachusetts, and, to some extent, of New York.    A few illustrations will serve to show how important are the public interests at stake.

A scheme is got up for a speculation which would be greatly promoted if it could enlist the support of certain men of high business or political station. They are entered on the list as stockholders; and, it may be, published to the community as such.    Now, why should they not be entitled to sue on such a "contract," it may be asked?    Why not in this way make adventurers pay for their speculation?    The answer is, because there should be no contractual suit unless there be a contractual relation, and there is no contractual relation on which both parties are not entitled to sue; and that if the party to whom the stock is assigned can sue the company on such stock, so the company could sue such party for any taxes or assessments imposed on the stock. It is bad enough, it may be well argued, to make me a winning party in a speculation, disreputable, it may be, with which I have had no concern.    But it is much worse to make me a losing party.    And I cannot avail myself of the contingency of gain without subjecting myself to the contingency of loss.

Another line of illustrations may be drawn from cases in which, not from selfish, but from disinterestedly benevolent purposes, an endowment is made for a particular class of individuals, or even for a particular person.    Now there is no question that a bill in equity will lie to compel the proper execution of such a trust.    But can a party for whose benefit the trust ought to operate, sue on it contractually?    If he can, then he can be sued contractually

on the duties the trust imposes on beneficiaries. And not only this objection is in the way, but it would be difficult to tell where the liability thus started would end. If a contract may be made with one indeterminate person it can be made with another indeterminate person; and there is no charity against whose managers parties within the range of its bounty could not maintain suit. It is true that in some cases contracts with indeterminate parties have been sustained, (e. g., contracts to pay a reward to whomsoever finds and restores lost goods;) but these are all cases in which the promisee does something in consideration of the promise, and in which the promise does not attach until the thing is done. In the case before us there is no consideration "flowing," as the books say, from the alleged promisee to the promisor, and in fact there is no promisee with whom the promisor can contract. The parties to the alleged contract never came together. There was no union between them as to any one particular thing.

Or, to put another line of cases not uncommon in every-day life, a father credits a child in his books with a specific sum of money, or deposits to the child's account a particular sum of money in bank. Now, does the making such an entry or deposit make a contract with the child? Undoubtedly it does when it evidences an arrangement between father and child by which the father was to receive a child's money or services, and repay the debt by the funds so secured. But suppose the child knew nothing about the entry or deposit, can he, when becoming aware of it, sue on it? He cannot, there being no further arrangement between the parties, since the entry or deposit did not constitute a contract. Supposing that the provision thus made by the parent for the child was a mere bounty, then it could be at any time revoked. If it could be at any time revoked, then it was not a contract. In fact, if we establish the principle that any expression of a benefit intended for a third party gives such third party a right of suit, charity, instead of being extended, would be torn up by the roots. Beneficiaries would become creditors; bounties would become legal dues; the party to be benefited would be released from all obligation of dependence and all limitation of conformity, while the party benefiting, unable to revoke or modify an intention once expressed, would find actual business engagements made by him postponed to what were mere unexecuted purposes. All men—at least it could be said before the late extension of contractual duty—know that to a contract two consenting parties are essential. And this is right. To create a contract where there is only one consenting party is not only to ignore an essential incident of contracts, but to invest with the obligation of contracts mere unilateral engagements which the parties making looked upon simply as revocable expressions of opinion.

For these and other reasons it has been held in England that only a party to a contract can sue on it, and that the contract for the benefit of a third party cannot be sued on by such third party.[1] At one time, it is true, it was held that on an agreement between A. and B. for the benefit of C., a child of B., suit could be brought by C.[2] This ruling, however, is no longer regarded as authoritative, and it is now firmly settled that the only parties who can sue on a contract are the parties between whom the contract is made.[3]

In this country, although there have been conflicts of opinion, not only between courts of different states, but between courts of the same state at different times, there are numerous authorities sustaining the English rule, as above expressed.[4] In New York there has been singular oscillation of opin-

[1] Dicey, Parties, (Am. Ed. 1879,) 81; Chit. Pl. (16th Am. Ed.) 1 et seq.; Leake, Cont. (2d. Ed.) 445; Chesterfield v. Hawkins, 3 H. & C. 677; Gurrin v. Kopera, 3 H. & C. 694; Gresty v. Gibson, 4 H. & C. 28; Hybart v. Parker, 4 C. B. (N. S.) 209; Storer v. Gordon, 3 M. & S. 308; Reeves v. Watts, L. R. 1 Q. B. 412; Gray v. Pearson, L. R.

[5] C. P. 568; Evans v. Hooper, L. R. 1 Q. B. D. 45; Ely v. Ass. Co. L. R. 1 Ex. D. 88; In re Empress Engineering Co. L. R. 16 Ch. 125.

[2] Dutton v. Pool, 1 Ventr. 318.

[3] Tweddle v. Atkinson, 1 B. & S. 393; Price v. Easton, 1 B. & Ad. 433.

[4] See Segars v. Segars, 71 Me. 530; Butterfield

ion, the courts apparently swaying to and fro under the pressure of sympathy with hardship at one time, or at another of loyalty to the principle that to a contract two consenting minds are essential. It was at one time generally announced that a beneficiary can sue personally in all cases in which the contract was made with the intention to benefit such beneficiary, to whom a duty was specifically due by the defendant.[1] But from the extension not unnaturally applied to this ruling, the courts after a while started back. "I do not understand," said RAPELLO, J.,[2] "that the case of *Lawrence* v. *Fox* has gone so far as to hold that every promise made by one person to another, from the performance of which a third would derive a benefit, gives a right of action to such third party, he being neither privy to the action nor the consideration. To entitle him to an action the contract must have been made for his benefit. He must be the party intended to be benefited." And this limitation not being found sufficiently stringent, it was afterwards declared that "to give a third party, who may derive a benefit from the performance of the promise, an action, there must be—*First*, an intent by the promisor to secure some benefit to the third party; and, *second, some privity between the two, the promisor and the party to be benefited,* and some obligation or duty owing from the former to the latter, which would give him a legal or equitable claim to the benefit of the promise, or an equivalent to him personally."[3] And with a still more perceptible retreat to the old rule, DANFORTH, J., in a later case, excludes from the right of suit on a contract all strangers to whose incidental benefit it would, if performed, inure.[4] Perhaps, as not varying greatly from the rule as thus qualified, may be cited the case in the text, and the recent rulings of the supreme court of the United States, on which it is based.[5] On the other hand, we have a strong line of authorities in which the condition of privity of contract is apparently dispensed with, and in which the right of beneficiaries to sue on contracts to which they were parties, is sustained wherever the intention of the contract was that they should specifically reap its fruits.[6]

---

v. Hartshorn, 7 N. H. 345; Lapham v. Green, 9 Vt. 407; Hall v. Huntson, 17 Vt. 244; Mellen v. Whipple, 1 Gray, 321; Exchange Bank v. Rice, 107 Mass. 39; Pettee v. Reppard, 120 Mass. 522; Cottage St. Church v. Kendall, 121 Mass. 528; Moore v. Moore, 127 Mass. 22; Stoddart v. Ham, 129 Mass. 383; Treat v. Stanton, 14 Conn. 445; Colt v. Ives, 31 Conn. 25; Burnett v. Jersey City, 31 N. J. Eq. 341; Owings v. Owings, 1 Har. & G. 484; Ross v. Milne, 12 Leigh, 204; Litchfield v. Garrett, 10 Mich. 426; Weather v. Ray, 4 Dana, 474. See, as bearing on the same question, Chaffee v. Railroad, 53 Vt. 345; Lake Ontario R. R. v. Curtiss, 80 N. Y. 219; Odell v. Mulry, 9 Daly, 381; Toohey v. Comstock, 45 Mich. 603; Ferris v. Water Co. 16 Nev. 44.

In Canney v. Railroad, Sup. Ct. Cal. 1883, the plaintiff, a physician, was, at the instance and request of certain parties wounded by a railroad accident, attending them, when the president of the railroad company (in the absence of the physician) told the wounded persons to employ whatever physician they chose, and the company would pay the bills. The plaintiff was advised of this, but he testified that he attended the wounded until their recovery, in pursuance of the original calling. It was held, in an action against the company upon contract for services performed, that there was no mutuality by consent between them, and no liability attached to the railroad company for the services performed by the plaintiff to the persons who employed them.

In the opinion of the court it was said, by McKEE, J.: "Trenor v. C. P. R. Co. 50 Cal. 222, is not applicable to the case in hand. That, it is true, was also a case for the services of a physician and surgeon rendered to persons wounded by a railroad accident; but there was in the case some evidence tending to show that the services were rendered at the instance and request of the defendant, and the case was decided upon a conflict of evidence. But in the case in hand there was no conflict of evidence. The plaintiff, in his testimony and on the trial, admitted, and his witnesses proved, that the services were rendered in pursuance of his original employment by those who were wounded, and not otherwise. There was, therefore, no contract, express or implied, between plaintiff and the defendant in relation to the services which are the subject of the suit, and, as there is no prejudicial error in the record, the judgment and order are affirmed."

1 Lawrence v. Fox, 20 N. Y. 268.

2 Gurnsey v. Rogers, 47 N. Y. 233.

3 Vrooman v. Turner, 69 N. Y. 280.

4 Lake Ontario Shore R. R. v. Curtiss, 80 N. Y. 223.

5 Hendrick v. Lindsay, 93 U. S. 143; Nat. Bank v. Grand Lodge, 98 U. S. 123.

6 Norwood v. De Hart, 39 N. J. Eq. 472; Ramsdale v. Horton, 3 Barr, 330; Bears v. Robinson, 9 Barr, 229; Justice v. Tollman, 86 Pa. St. 147; Merriman v. Moore, 90 Pa. St. 80; Thompson v. Thompson, 4 Ohio St. 333; Helms v. Kearnes, 40

It may be said that if non-parties are excluded from suing great hardship will sometimes be worked. He who has money deposited to his credit cannot collect it; and he for whom stock is bought cannot enforce its transfer. But to this the answers are as follows:

(1) When the party making the deposit or buying the stock acts as agent of the supposed beneficiary then the latter can sue as principal; when there is no agency, and no request that the money should be deposited or stock bought, then the transaction is subject to the following criticism:

(2) The deposit or purchase—to take these concrete cases as illustrations—is either irrevocable or revocable. If the party making the deposit or purchase has no desire to revoke, then all the difficulty can be solved by the simple process of novation. On the accession of the beneficiary to the agreement,—on his recognition by the bailee, at the request of the bailor, as the party interested,—then a new contract is formed, on which the beneficiary is entitled to sue.[1] If, on the other hand, the bailor desires to revoke, there is nothing for the claimant, as in such case he may more properly be called, to sue for. The thing was once in the bailee's hands, but has been taken away by the bailor. He had a right to change his mind as long as he had made no engagement with the claimant a failure to perform which works injury to the latter.

(3) In case such injury has been sustained by the misconduct of a bailor, he is liable for a suit for damages. He is not suable contractually by the claimants, for there was no contract; but he is suable for any detriment he may cause to any party whom he may, by his conduct, have subjected to specific pecuniary loss.

(4) In case of trusts for particular objects, a bill in equity can be maintained to compel faithful performance. This has been applied to trusts, special as well as general.[2] In such case the difficulty arising from non-contractual claimants suing on a contractual claim is avoided. (a) There is no possibility of a conflict between two claimants, since both join as plaintiffs. (b) The procedure is to enforce a trust, and does not rest on contract.[3]

The question, it may be said in conclusion, is not, as has been sometimes said, one of form. If so, it ought not to be raised; and if raised, ought, under the liberal system of pleading now accepted, to be cured by amendment. But it is not a matter of form, but of substance, and of important substance. It is, in fact, whether a claim is to be called a contract when it is not a contract. To a contract there are certain marked essentials, chief among which is that of the concurrence in it of parties interchanging their consents to one specific thing. When this essential does not exist there may be a claim for damages, but no contract; and for courts, in such cases, to say that there is a contract, is a dangerous precedent, which may lead to destructive results. If a contract may be assumed in one case, where a benefit has been proffered, but not accepted, it can be assumed in all cases. A load of coal is dumped down at my cellar, or a newspaper posted to my address, or a suit of clothes left at my

Ind. 162; Beesley v. Webster, 64 Ill. 458; Snell v. Ives, 85 Ill. 279; and other cases cited in Whart. Cont. § 785. See Stariha v. Greenwood, 28 Minn. 521, where it was held that where A. conveys property to B., who, in consideration thereof, promises to pay A.'s debt to C., C. may sue B. on the promise. In Green v. Morrison, 5 Col. 18, it was held that a third party, to whose benefit a simple contract has been entered into, for a valuable consideration moving from the promisee, may maintain an action in his own name, or may plead it by way of set-off. See, further, Shanklin v. Ins. Co. 77 Ind. 288; Mize v. Barnes, 78 Ky. 506.

[1] See Whart. Cont. § 852 et seq.

[2] In re Empress Engineering Co. L. R. 16 Ch. D. 125.

[3] As showing the inconvenience likely to result from the recognition of the right of third parties to sue, see, also, Gilbert v. Sanderson, 56 Iowa, 349; Cohrt v. Koch, 50 Iowa, 658; Glover v. Univers, 14 Rep. 560. In Ridge v. Olmstead, 73 Mo. 578, in accordance with the views insisted on above, it is held that the title to money paid to one person for the benefit of another, does not pass to the latter until notice to him and acceptance, forming a novation.

door, and I am declared liable for them, on the principle that where a benefit is tendered it confers a right to sue. The only safe check against such invasions of right is to hold fast to the rule that no claim can be sued on contractually unless it is on a contract between the parties to the suit.

FRANCIS WHARTON.