CENTRAL TRUST CO. OF NEW YORK v. BERWIND-WHITE COAL CO.

(Circuit Court, S. D. New York. July 8, 1899.)

1. CONTRACTS—PROVISION FOR BENEFIT OF THIRD PERSON—RIGHT TO SUE IN HIS OWN NAME.

A provision of a coal lease by which the lessee, who is required to mine a certain quantity each year, agrees to pay from the royalties due the lessor, who is also the mortgagor of the leased premises, a specified sum quarterly to the mortgagee in payment of interest on the mortgage debt, is one for the benefit of the mortgagee; and he may maintain an action thereon in his own name, irrespective of the fact that the lease is under seal, under the system of procedure in the state of New York.

2. PLEADING—SUFFICIENCY OF COMPLAINT.

In an action against a lessee in a coal lease to recover payments thereunder, an allegation in the complaint that such payments had become due and payable under its terms is a sufficient allegation that the lease was still in force.

3. MINING—COAL LEASE—CONSTRUCTION.

Where a coal lease requires the lessee to mine a certain amount each year, a provision that royalties are to be paid so long as coal to that amount is produced under the lease does not relieve the lessee from the payment of royalties, where he arbitrarily and willfully refuses to mine such amount.

On Demurrer to Complaint.

Lewis Cass Ledyard, for demurrer.

Arthur H. Van Brunt, opposed.

SHIPMAN, Circuit Judge. This is an action at law which was brought in the supreme court of the state of New York, and was removed to this court upon the application of the defendant, by reason of the diverse citizenship of the parties. The plaintiff is a corporation of the state of New York, and the defendant is a corporation of the state of Pennsylvania, and has demurred to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The complaint alleges that on April 9, 1892, the Clearfield Creek Coal Company, a corporation of Pennsylvania, mortgaged to the plaintiff, as trustee, certain real estate, coal grants, and leasehold interests, situate in Pennsylvania, to secure the payment of 400 bonds of the mortgagor, each for the sum of $1,000, payable on January 1, 1942, with interest at the rate of 5 per cent. per annum, payable in semiannual installments at the office of the plaintiff, on the 1st days of January and July in each year, and that said bonds have been sold and are in the hands of holders for value. It further alleges that the Clearfield Company and the defendant entered into a written agreement, dated May 28, 1892, by which the relation of lessor and lessee was established between them, as to all the coal leased and demised under and by certain leases referred to in said agreement, and that certain royalties were thereby fixed and established as payable by the defendant to the Clearfield Company for the mining of coal under the provisions of this agreement, a copy of which was annexed to the complaint. It was a contract inter partes, executed in Pennsylvania, and sealed by each party. The coal rights which were leased were

the mortgaged premises.    One of the provisions of the lease, and which was set forth in the complaint, was as follows:

"And the parties mutually agree that out of the whole of the premises hereinbefore named and leased, subject to the provisions and stipulations of the leases thereof, there shall be mined during the year ending June 1, 1893, and annually thereafter, during the continuance of this lease, three hundred thousand (300,000) gross tons, and that, of the royalties payable for the same to the said coal company, twenty thousand ($20,000) dollars shall be paid by the mining company to the Central Trust Company of New York, in equal quarterly payments of five thousand ($5,000) each, commencing June 20, 1892, and quarterly so long as coal to that amount is produced under this lease, to be applied by said trust company to the payment of the coupons of the said coal company's bonds there maturing."

The complaint further alleges:

"That defendant entered into possession under the agreement and mined coal in accordance with its terms. That during the year ending June 1, 1893, coal was mined and produced under said lease to the amount of 300,000 gross tons and upwards, and coal to that amount and upwards was produced, or would have been produced, annually thereafter; but that since June 1, 1896, defendant has willfully and wrongfully failed, neglected, and refused to mine said minimum amount of 300,000 tons annually." "That defendant made the payments to and including January 1, 1897, but has made none since that date, though demand has been made; and that the coupons appertaining to the bonds, maturing July 1, 1897, January 1, 1898, and July 1, 1898, are due and unpaid." "That six quarterly payments, of $5,000 each, have become due and payable, but that defendant has failed to pay them after demand; and prays judgment for $30,000 and interest."

The important point in the case arises upon the defendant's proposition that no action can be maintained by the Central Trust Company upon the agreement contained in the lease because it was not a party to the agreement, nor privy thereto, and the agreement was not primarily intended for its benefit.

The question of the ability of a plaintiff, who was not a party to an agreement which contains provisions for his benefit, to sustain an action at law thereon in his own name, is one which has often arisen, has been the subject of conflicting decisions, and upon which the opinions of courts have not always been in continuous harmony with their previous utterances.   The early English decisions were favorable to the right of a plaintiff to sustain such an action in a limited class of circumstances, but it is understood to have been now established in England, "so far as any common-law right of action is concerned, that a third person cannot sue on a contract made by others for his benefit, even if the contracting parties have agreed that he may."   Austin v. Seligman, 18 Fed. 519.   In a careful statement by the circuit court for this district of the law in this country, it was said: "The result of the better-considered decisions is that a third person may enforce a contract made by others for his benefit, whenever it is manifest, from the nature or terms of the contract, that the parties intended to treat him as the person primarily interested."   Austin v. Seligman, supra.   The point of divergence in the decisions has been the definition of the language, "for the benefit of a third person," and the form of the contract in which the agreement was contained has often had an important influence upon the definition.   At common law, the right of a plaintiff to sue in as-

sumpsit in his own name upon the promise contained in an agreement not under seal, if it was evidently made for his sole benefit, although he was not a party to the contract, was generally admitted. Hendrick v. Lindsay, 93 U. S. 143; 2 Kent, Comm. 463. If the promise was contained in a deed inter partes,—that is, one which, "on the face of it, expressly describes and denotes who are parties to it, C., if not expressly named as a party, cannot sue thereon, although the contract purports to have been made for his sole advantage." 1 Chit. Pl. 3. If the promisor made his promise under seal, the action must be in debt or covenant, and must have been in the name of the party to the instrument, because the party not named could not sue in debt or covenant, for no covenant had been made with him. 1 Pars. Cont. (6th Ed.) 467; Hendrick v. Lindsay, 93 U. S. 143; Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831. In many of the states of this country where the common-law forms of action have disappeared, the stringency of these definitions has also been relaxed.

The lease was of property in Pennsylvania, and was executed in that state by two of its corporations. The plaintiff says that the part of the contract in regard to the payment to it of royalties was made with a view to the law of New York, and is to be interpreted accordingly. The mere fact that a payment was to be made to a New York corporation does not declare that the contract was made with a view to the law of that state; but an examination of the Pennsylvania decisions shows that, while the courts of the two states differ materially in regard to the form of the remedy, there is no substantial difference in regard to the interpretation and legal effect of the contract. A general rule was early declared in Pennsylvania as follows: "He for whose benefit a promise is made may maintain an action upon it, although no consideration pass from him to the defendant, nor any promise from the defendant directly to the plaintiff." Hind v. Holdship, 2 Watts, 104. In this case, an insolvent had assigned his property without preferences in favor of his workmen, but by a parol promise the assignee declared that "the hands should be paid, at any rate." The action was in favor of a workman against the assignee. The principle of this case has frequently been recited, and has been followed in Pennsylvania, especially in cases where a tradesman had sold his stock of goods, the purchaser agreeing that he would pay the debts of the seller. Beers v. Robinson, 9 Pa. St. 229; Bellas v. Fagely, 19 Pa. St. 273; Townsend v. Long, 77 Pa. St. 143. The Pennsylvania courts have, however, been exact in regard to the form of the remedy, and have insisted that, "where a covenant is made by one man for the benefit of another, the action must be brought in his name who made the covenant"; but, in the case of promises not under seal, the person for whose benefit the promise is made may support an action of assumpsit for its breach. Strohbecker v. Grant, 16 Serg. & R. 237; De Bolle v. Insurance Co., 4 Whart. 68; Maule v. Weaver, 7 Pa. St. 329. They refused to hold that the mere fact that the defendant purchaser had agreed with the grantor or vendor to pay his debt to a third person, as a payment, in whole or in part, of the purchase price, the debt having no connection with the pur-

chased property, was an agreement for the benefit of the third person (Blymire v. Boistle, 6 Watts, 182); but where a purchaser of real estate had, in a simple contract signed by the vendor only, assented to an agreement which declared that he was to pay a mortgage upon the land, the courts of Pennsylvania have no doubt that he is liable in assumpsit to the mortgagee (Hoff's Appeal, 24 Pa. St. 200; Merriman v. Moore, 90 Pa. St. 80).

Where the promise for the benefit of a third person is under seal, he must obtain his remedy by a suit in the name of a covenantee, for the use of such third person. In Mississippi R. Co. v. Southern R. Co., 4 Brewst. 79, the plaintiff had leased to the defendant its railroad; the defendant agreeing to pay generally the bonds and coupons which the plaintiff had issued, but not specifying the person to whom payment was to be made. In an action by the lessor for the use of an individual owner of some of these bonds and coupons, Judge Sharswood held that an action did not lie in favor of a covenantee for the use of a single bondholder,—a decision which is in harmony with the intimations in Barlow v. Myers, 64 N. Y. 41, and upon a very different state of facts from those contained in this case, in which a definite promise was made to pay a named person in quarterly payments.

A statute of Pennsylvania passed in 1878 specifies the manner in which the personal liability of a grantee of real estate to pay an existing incumbrance upon the land shall thereafter be expressed, and to whom the promise shall inure (2 Pepper & L. Dig. p. 4063), but this statute does not relate to the terms of the contract now under consideration. The cases of Hoff's Appeal and Merriman v. Moore, and the well-known case of Blymire v. Boistle, supra, sufficiently explain the position of the Pennsylvania courts upon the legal effect of different classes of contracts to pay a third person, irrespective of any complications in regard to remedy.

The decisions of the New York court of appeals upon the point raised by the demurrer all turn back to the case of Lawrence v. Fox, 20 N. Y. 268, in which the facts were very simple. One Holly, by parol agreement, loaned $300 to the defendant, telling him that he owed that sum to the plaintiff, and the defendant thereupon promised to pay the money to the plaintiff. The contract was held to be for the benefit of the plaintiff, who recovered in assumpsit. The principle of the decision has not been enlarged, but it has been applied mainly in cases of promises by the grantee of the mortgagor to pay the money due upon mortgages; and it has been repeatedly held, upon the principle of Lawrence v. Fox, that a mortgagee may maintain an action at law against a grantee of the mortgaged premises, who by the acceptance of a deed poll from the mortgagor, in which the grantee is made to assume payment of the mortgage, has covenanted, with the knowledge of the mortgagee, to make such payment. Burr v. Beers, 24 N. Y. 178; Thorp v. Coal Co., 48 N. Y. 253; Wager v. Link, 134 N. Y. 122, 31 N. E. 213; Insurance Co. v. Aitken, 125 N. Y. 660, 26 N. E. 732. So firmly has this been established that in Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, Mr. Justice Gray says that, by the law of New York, "the mortgagee may sue

at law a grantee who, by the terms of an absolute conveyance from the mortgagor, assumes the payment of the mortgage debt." According to that view, the grantee, as soon as the mortgagee knows of the assignment, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt; and this right exists irrespective of the fact that the agreement was under seal.

The decisions in a large number of states are in favor of the right of a mortgagee to sue in an action at law in his own name upon this class of contracts.  It was said by a judge who was not in favor of the principle that "perhaps it is not too much to say that the prevailing current of authority is in that direction."  Meech v. Ensign, 49 Conn. 205.  Its universal adoption would be in the interest of freedom from adherence to technicality.

Is the principle of these mortgage cases applicable to the facts in this case?  The plaintiff, at the time of the lease, was a mortgagee of the land containing the coal which was leased and demised,  The mortgagor was not grantor of a fee, but was lessor, and the defendant, instead of being a purchaser, was lessee, and agreed that the minimum quantity annually mined should be 300,000 tons, and that, of the royalties payable for the same to the lessor (which would largely exceed $20,000), $20,000 should be paid to the plaintiff in equal quarterly payments, of $5,000 each, to be applied by the plaintiff to the payment of the lessor's bonds.  The defendant made payments from June 20, 1892, to and including January 1, 1897, and the plaintiff was made aware of the agreement.  The fact that the parties were lessor and lessee, instead of being vendor and vendee, and that a sum equal to the interest only was to be paid by the lessee to the mortgagee, instead of its principal, makes no difference in the principle which underlies all the mortgage cases.  But it is said that the part of the contract relating to these payments was merely an incident to the agreement to mine 300,000 tons; that the mining part of the agreement was for the benefit of the coal company, and could not be sued upon by the plaintiff; and that the agreement to pay part of the royalties to the plaintiff was for the convenience of the coal company in making its payments of interest.  It is probably true that the plaintiff could not sue the defendant for its willful refusal to mine coal, but its right to sue for a portion of the royalties depends upon the question whether the provision was manifestly and intentionally made for its benefit, and had such benefit as its object.  Austin v. Seligman, 18 Fed. 519; Simson v. Brown, 68 N. Y. 355; Garnsey v. Rogers. 47 N. Y. 233.  The lessor had just given a mortgage of $400,000 to the plaintiff, and had promised to pay interest thereon amounting to $20,000 annually, in semiannual payments.  It is now agreed that royalties to the amount of $20,000 should be directly paid to the plaintiff in payment of the coupons, in equal quarterly payments.  In addition to its own obligation and the security of the land, it gives

the defendant's individual obligation to pay the interest quarterly. The lessee, as between the lessor and lessee, has become the principal for the payment of interest. The intention and the object of the provision were, as in the mortgage cases, palpably and primarily for the benefit of the plaintiff, and to enhance its certainty of securing the interest upon the lessor's mortgage. It is not required that the benefit of the plaintiff should be the sole object of the agreement.

The next point is that the complaint does not state that the defendant had agreed or was under obligation to mine between January 1, 1897, and July 1, 1898. It is true that the complaint does not formally state that the lease was in force up to and on July 1, 1898; but it does state that on and prior to July 1, 1898, quarterly payments amounting to $30,000 had become due and payable under the terms of the agreement, which sufficiently avers that the lease continued to be operative.

It is next said that the agreement provides that the royalties are to be paid so long "as coal to that amount is produced under the lease," and, as it appears from the complaint that no coal was mined after January 1, 1897, there was no obligation on the part of the lessee to pay. The clause which is referred to was to prevent an obligation to pay if coal did not exist or had been exhausted, but not to relieve the lessee from his liability to pay a royalty if he willfully and arbitrarily refused to mine. The complaint avers a willful and wrongful neglect and refusal by the defendant to mine after June 1, 1896. The demurrer is overruled, with costs, with leave to the defendant to answer within 30 days from the date when this opinion shall be filed.