## HENDRICK v. LINDSAY ET AL.

1. It is now the prevailing rule in this country, that a party may maintain assumpsit on a promise not under seal made to another for his benefit.
2. In the absence of any evidence whatever to contradict or vary the case made by the plaintiff, it is not error for the court, when the legal effect of the plaintiff's evidence warrants a verdict for him, to so charge the jury.

ERROR to the Circuit Court of the United States for the Northern District of New York.

In March, 1871, one Ballantine recovered a judgment in the Circuit Court of the United States for the Eastern District of Michigan against the Albany Insurance Company, for $3,425.34 and costs. That company desiring to bring the case to this court upon writ of error, Hendrick, its vice-president, on the 8th of March, 1871, wrote to Lindsay, one of the defendants in error, as follows : —

" A. G. LINDSAY, Esq., Detroit :

"DEAR SIR, — Will you be good enough to sign the needful bail-bond in the ' Park ' case, and oblige

"Yours truly,          JAMES HENDRICK, V. P."

On the 10th of that month, Lindsay replied : " I beg to say that I will sign the bail-bond in the ' Park ' case, if you will first furnish me with sufficient security to indemnify me in case of our defeat ; the case may be delayed years at Washington, and many changes may occur in that time."

On the next day Hendrick wrote to Lindsay, acknowledging the receipt of the letter of the 10th, and saying, " Whatever security may be desired in the shape of a personal bond, I will give it to you." After the receipt of this letter, the defendants in error executed to Ballantine their

joint and several bond, which was accepted, approved, and filed on the sixteenth day of March, 1871; whereupon the insurance company sued out a writ of error, by which, and in virtue of the bond, said judgment was superseded.

On the 15th of March, 1871, Hendrick wrote to Lindsay, saying as follows: —

"I have just returned from Boston, and learn that you have not yet advised us of having signed our bail-bond in the 'Park' case. As it should be done at once, I hope you will feel that we have, if nothing more, a feeling of old friendship, that ought to make men of us in an hour of need."

On the 17th, Lindsay replied, —

"Upon receipt of your favor of the 11th inst., I signed your bond in 'Park' case without loss of time, and supposed the fact itself was answer to you in the premises until this A.M. I received yours of the 15th inst., touching on the same subject, and now ask your pardon for not stating to you at once, upon the receipt of your 11th inst. favor, that the bond was executed."

On the 20th, Lindsay again wrote as follows: —

"DEAR SIR, — Enclosed is bond of indemnity, which please have executed and returned to me."

The bond was as follows: —

"Know all men by these presents, that we, James Hendrick, as principal, and        , as surety, of Albany, in the State of New York,    held and firmly bound unto Archibald G. Lindsay and James P. Mansfield, of the city of Detroit, county of Wayne, and State of Michigan, in the sum of $5,500, lawful money of the United States of America, to be paid to the said Lindsay and Mansfield, or to their certain attorneys, heirs, executors, administrators, or assigns, to which payment, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors, and administrators, and each and every of them, firmly by these presents, sealed with our seals, dated the twentieth day of March, 1871.

"The condition of this obligation is such, that, whereas the said Lindsay and Mansfield have lately, at the request of the said Hendrick, signed two bonds, — one in the sum of $5,000, and one in the sum of $200, — in a case pending in the Circuit Court of the United

States for the Eastern District of Michigan, in which suit James
M. Ballantine was plaintiff, and the Albany City Insurance Com-
pany was defendant, said bonds being filed for the purpose and
intent of taking said case to the Supreme Court of the United
States.

"Now, therefore, if the said Hendrick shall save and keep the
said Lindsay and Mansfield fully indemnified and harmless against
all loss, damages, or expenses arising from their giving the said
bonds, then the above obligation to be void; and otherwise, in
force."

No dissent was expressed by Hendrick, nor was the bond
executed by him.

Ballantine's judgment having been affirmed by this court,
Lindsay and Mansfield paid it by their negotiable notes, and
thereupon brought assumpsit against Hendrick for the amount
so paid.

The plaintiffs, after proving the foregoing facts, rested their
case.   The defendant announced that he had no evidence to
offer.

The court charged that the plaintiffs were entitled to recover,
and directed the jury to so find; to which charge and direction
the defendant excepted.

The jury found a verdict for the plaintiffs; and judgment
having been rendered thereon, the defendant sued out this writ
of error.

*Mr. T. Lawson* for the plaintiff in error.

The undertaking of a surety is to be strictly construed, and
should not be extended to any other subject, person, or period of
time than is expressed in the obligation.   Birge on Suretyship,
40; *Birkenhead et al.* v. *George et al.*, 5 Hill (N. Y.), 634;
*Barns et al.* v. *Barron*, 61 N. Y. 39; *Miller* v. *Stewart*,
9 Wheat. 703; *Ludlow* v. *Simonds*, 2 Caines's Cas. 1; *Lord
Arlington* v. *Merrick*, 3 Saund. 400; *Grant* v. *Naylor*, 4 Cranch,
224; *Bleecker* v. *Hyde*, 3 McLean, 279; *Wright* v. *Russell*,
3 Wils. 530; *Weston et al.* v. *Barton*, 4 Taunt. 726; *Strange
et al.* v. *Lee*, 3 East, 484; *Chancellor, &c. of Cambridge* v.
*Baldwin*, 5 M. & W. 580; *Day* v. *Davey*, 2 Per. & Dav. 249;
*London Assurance Co.* v. *Bold*, 6 Adol. & Ell. N. s. 514.

In order to entitle the plaintiffs to recover, they were bound

to show payment and discharge of the liability or debt. *Bonny* v. *Seeley*, 2 Wend. 482 ; *Powell* v. *Smith*, 8 Johns. 248.

The giving of one's own note will not, unless it is *expressly* so agreed, operate as payment or discharge of a prior debt or obligation. *The Kimball*, 3 Wall. 37 ; *Downey, Ex'r*, v. *Hicks, Ex'rx*, 14 How. 240 ; *Drake* v. *Mitchell*, 3 East, 250 ; *Tobey* v. *Barber*, 5 Johns. 68 ; *Johnson* v. *Weed*, 9 id. 309 ; *Wetherby* v. *Mann*, 11 id. 516 ; *Van Ostrand* v. *Reed*, 1 Wend. 424.

*Mr. Walter H. Smith* for the defendants in error.

A party occupying the position of a surety who gives his negotiable note, which is accepted in satisfaction of a debt or obligation, can maintain an action against his principal. *Wetherbee* v. *Mann*, 11 Johns. 518 ; *Rodman* v. *Hedden*, 10 Wend. 501 ; *Elwood* v. *Deifendorf*, 5 Barb. 410 ; *Van Ostrand* v. *Reed*, 1 Wend. 430.

The promise of the plaintiff in error to indemnify, under the circumstances, entitled the defendants in error to maintain their action. *Elwood* v. *Deifendorf*, *supra ;* 1 Story's Eq. Jur., sect. 499.

The true construction of the undertaking of the plaintiff in error to indemnify the sureties is to be found in the intention of the parties. *Gates* v. *McKee*, 13 N. Y. 232 ; *Nash* v. *Towne*, 5 Wall. 699.

Although Mansfield's name was not mentioned in the letters to Hendrick, yet if the promises and undertaking of the latter were intended to inure to the benefit of any person or persons whom Lindsay might procure to sign the bail-bond, then such person or persons can, at common law, sue directly and in his or their own name, in assumpsit. Chitty, Contr. 54–58, and cases cited.

MR. JUSTICE DAVIS delivered the opinion of the court.

There were no disputed facts in this case for the jury to pass upon. After the plaintiffs had rested their case, the counsel for the defendant announced that he had no evidence to offer ; and thereupon the court, considering that the legal effect of the evidence warranted a verdict for the plaintiffs, told the jury in an absolute form to find for them. This was correct practice where there was no evidence at all to contradict or

vary the case made by the plaintiffs ; and the only question for review here is, whether or not the court mistook the legal effect of the evidence. *Bevans* v. *United States,* 13 Wall. 57 ; *Walbrun* v. *Babbitt,* 16 id. 577.

It is very clear that the transaction in question constituted a good contract between some parties. The real inquiry is, whether the promise and undertaking of Hendrick were intended to inure to the joint benefit of Lindsay and Mansfield, so as to entitle them to bring an action. In construing letters like those on which this suit is based, the language employed is one, but not the only, element to be considered in arriving at the intention of the writers. In determining the sense in which the words were used, they should be considered in connection with the subject-matter of the correspondence, the situation of the parties, the thing to be done, and the surrounding circumstances.

There is no absolute proof of the relation sustained by Hendrick to the insurance company, other than that he was its vice-president ; but from the tenor of the letters it is quite clear that he managed its business in Michigan, and had general authority over it in that State. It is equally clear that Lindsay was only a local agent of the company at Detroit, with the usual powers and duties belonging to such an appointment. Such was the relative position of these persons when it became necessary to take action on Ballantine's judgment against the company in the Circuit Court of the United States at Detroit. Lindsay had no concern with it. The officers of the corporation in Albany were to determine whether to let the judgment remain in force, or to sue out a writ of error from this court. To stay the execution required a bond of considerable amount. It was not necessary that the company should sign it, but it was absolutely essential that the offered security should be satisfactory to the judge whose duty it was to approve the bond. In this state of the case Hendrick wrote to Lindsay, " Will you be good enough to sign the needful bail-bond ? " This request, construed literally, would limit the application to Lindsay alone. But this is a narrow construction ; and evidently the words could not in this sense have been used by Hendrick or adopted by Lindsay. The request was coex-

tensive with the object to be attained; — that of superseding the judgment and securing a hearing in a higher court; and Hendrick asked Lindsay to see that whatever was required for this purpose should be done. To suppose any thing else is to suppose, that, wishing a certain thing effected, he restricted his agent in the use of the necessary means to accomplish it; for it might turn out that the judge would require two securities instead of one, or that Lindsay would not be accepted at all. Besides, it was immaterial to Hendrick whether the bond was signed by one or more persons, as he promised to give indemnity in the shape of a personal bond. It is true that this promise, in terms, was to Lindsay; but there is no reason why it, any more than the request, should be limited. If the request applied, as we think it did, to the procurement of a sufficient bond, the promise has a like extent. That Lindsay and Mansfield (to whom the correspondence was communicated) understood them to have this effect, is clear enough, from their signing the bond and staying the collection of the judgment. It is also equally clear, from the same fact, that Lindsay requested Mansfield to become one of the sureties, and that they both executed the bond, relying upon the undertaking of Hendrick to furnish the promised indemnity.

This was not done, although prompt application was made to him by letter from Lindsay, enclosing a draft of the indemnity bond. He neither signed nor returned it, nor did he afterwards correspond with any one on the subject. The draft recites that the *supersedeas* bond was executed by Lindsay and Mansfield, at the request of Hendrick. He was, therefore, informed of the interpretation which they put upon his request and promise; and, if it was wrong, he would at least, as an excuse for doing nothing, have availed himself of the occasion to repudiate the whole proceeding. As he did not do this, but retained, without objection, the draft, he in effect adopted that interpretation.

It is argued that Hendrick had no personal interest in the matter, and that, therefore, there was no consideration for his promise. But damage to the promisee constitutes as good a consideration as benefit to the promisor. In *Pillan* v. *Van Mierop*, 3 Burr. 1663, the court say, " Any damage or suspension

of a right, or possibility of a loss occasioned to the plaintiff by the promise of another, is a sufficient consideration for such promise, and will make it binding, although no actual benefit accrues to the party promising." This rule is sustained, by a long series of adjudged cases.

It is also argued, as Mansfield's name does not appear in the letters of Hendrick, that he could not join in this action. This would be true, if the promise were under seal, requiring an action of debt or covenant; but the right of a party to maintain assumpsit on a promise not under seal, made to another for his benefit, although much controverted, is now the prevailing rule in this country. 1 Pars. Contr. (6th ed.) 467, and cases cited. If Hendrick engaged with Lindsay to indemnify the sureties furnished by him, and on the faith of this promise Lindsay and Mansfield executed the *supersedeas* bond, as we hold was the case here, then, if they suffered loss by reason of the breach of this contract, they are entitled to maintain this suit. That they did suffer loss, to the extent of Ballantine's judgment against the company, which was affirmed in this court, is the legal effect of the evidence of the only witness on the point. He states directly that he and his co-plaintiff paid on the bond to Ballantine a certain amount of money, meaning, evidently, on the judgment to secure which the bond was given. It is true he says, "We did not pay cash," "we paid it in our notes;" but negotiable promissory notes are equivalent to the payment of money, if received by the creditor in satisfaction of the judgment, though such satisfaction be not entered on the record. The witness, through all his testimony, speaks of what he did as payment; and the true inference from the whole of it is, that Ballantine treated these notes as so much money paid him. There was no reason why he should not; for the bond was his only reliance, and the enforced collection of it would have occasioned expense and required time. It was far better for him, if the obligors were good (and this is the presumption), but unable to pay at once, to take time-notes in liquidation of the demand, than to bring suit on the bond. Besides, this is not an unusual way of closing up such a transaction, where the circumstances surrounding it appeal so strongly to the indulgence of the creditor.

On the whole, we are of the opinion that the court below did not mistake the legal effect of the uncontradicted testimony in the case, and that there was no error in instructing the jury to find for the plaintiffs.                    *Judgment affirmed.*