Barker, J.—I
have no difficulty in disposing of the disputed questions of fact. That the mortgage was foreclosed with the consent of Theron Sackett, the mortgagor, in pursuance of an arrangement with the defendant for the purpose and as a means of vesting the title to the premises in him, cannot- be doubted. The defendant does not seriously t dispute this contention. As the defendant, with the aid of his father, readily obtained the money to pay his bid on the foreclosure sale it makes it quite clear that the expenses of the foreclosure suit were incurred with a view of securing a result which could not be otherwise readily accomplished. It is scarcely denied, by either the plaintiff or defendant, that the real object sought to be realized by the foreclosure suit was the extinguishment of the inchoate right of dower of Mrs. Sackett in the lands covered by the mortgage.
That the mortgagor expected to realize ■ more than the payment of the debt secured by the mortgage on permitting a sale of the premises to take place, it is impossible to disbelieve. The premises were worth at least three times the amount of the debt secured by the mortgage, and the value of the premises over and above'the amount of such debt constituted the entire estate of Mr. Sackett at that time.
The evidence and the circumstances of the case lead me to the conclusion, which is reached without much hesitation in my own mind, that the defendant, in consideration of being allowed to purchase the premises at the sale for the sum which he did therefor, did promise and agree with his father, before and at the time of the sale, that he might remain in the possession and use of the premises during his life, free from rent, and at his death he would pay to each of his three sisters one-third the value of the premises after deducting therefrom the amount paid by him for the premises on the foreclosure sale.
The mortgagor continued to occupy the premises after the sale and up to the time of his death the same as he did before the sale. That part of the defendant’s promise was fully performed. ■ The question cannot now arise whether that part of the agreement was valid and binding, because the same was not reduced to writing, and of course does, not now need to be considered.
. As to that part of the agreement to pay a money consideration to the daughters, the same may be enforced. *253 although not in writing. If there was a good and sufficient consideration for .the-promise, that is all that is necessary iiTview of the other facts and circumstances of the case,to enahlejhe. 4)ffiiniiil±0- maintain this action. It is true that the plaintiff had no estate in the premises sold and was, in .a legal sense, a stranger to the contract and the consideration, yet, as the defendant’s promise was express to pay a portion of the money consideration direct to the plaintiff, she can maintain an action in her own name to enforce the promise.
The defendant contends that as the plaintiff was a stranger to the consideration, there is no privity of contract between the plaintiff and the defendant, and therefore she cannot maintain an action on the defendant’s promise made to her father to pay over to her the money sued for.
The legal proposition thus presented has been much considered and discussed, but, in this state, the law is now well settled' that, upon the facts of this case, an action may be supported in the name of the person intended to be benefited by . the promise. The cases bearing on the subject affirm the principle that where one person makes a promise to another for the benefit of a third person that such third person may maintain an action on the promise. In apply-1 ing this principle of law to particular cases proper carel must be used by the court for the purpose of determining whether or not the immediate parties to the contract in-1 tended that a third person should derive a benefit and ad-1 vantage from the promise and thus secure a right toj enforce the same by an action at law in his own name. Barker v. Bucklin, 2 Den., 45; Lawrence v. Fox, 20 N Y , 268; Burr v. Beers, 24 id., 178; Pardee v Treat, 82 id., 387; Todd v. Weber, 95 id., 181-194, Farley v. Cleveland, 4 Cow., 433.
The case at bar belongs to a class of cases somewhat peculiar on account of the relationship existing between the parties to the transaction, indicating an intention on their part that the third person named was to be treated as a beneficiary under the contract Such contracts or arrangements are regarded by the courts, and are understood by the parties, as being in the nature of a family settlement and will be enforced so as to carry out the purpose bf the parties
Dutton v Poole (2 Levinzs, 210), is generally cited as the parent case from which the doctrine, as established in this country, is derived in this class of cases, and has been cited with unqualified approval by the court of appeals as late as the case of Todd v. Weber (reported in the 95th N. Y., 181) In that case the father of the plaintiff’s wife being seized *254 of certain lands, which afterwards, on his death, descended to the defendant, and being about to cut £1,000 worth of timber to raise a portion for his daughter, the defendant-promised the father, in consideration of his forbearing to-cut the timber, that he would pay the said daughter £1,000. It was urged, in that case, that the action should have been brought by the father, and not by the husband and wife, but it was held, after much discussion, that the action would lie. It was said, however, that it would have been another case if the money was to have been paid to a stranger; “but there is such a manner of relation between the father and the child, and it is a kind of debt to the child to be provided for that the plaintiff is plainly concerned.”
Judge Comstock, who dissented from the prevailing opinion in Lawrence v. Fox, referred to this case and remarked, “it belongs to a class of cases somewhat peculiar and anomalous, in which promises have been made to a parent or a person standing in a near relationship to the person for whose benefit it was made, and in which, on account of that relationship, the beneficiary has been allowed to maintain the action.”
In Cumberland v. Codrington (3 John. Ch., 254), Chancellor Kent held, that where a father conveyed land to his son on his covenant to pay an annuity to his mother during her life-time, she might maintain an action on the covenant so made for her benefit.
In Todd v. Weber (supra), the agreement related to a family affair, and the court referred to many of this class of cases, remarking “that a party for whose benefit a promise is made may sue in assumpsit upon such promise, although the consideration for such promise was a consid eration between the promisor and a third person.” See, also, Hendrick v. Lindsay, 93 U. S., 143.
I think the evidence is sufficient and justifies the finding that the defendant’s promise was to pay separately and individually to each of his sisters, and not to them jointly. Julia says that the defendant agreed to give “notes.” And uses that term in the plural all through her evidence. There is nothing in the case indicating an intention that the daughters should take a joint interest under the .arrangement.
The defendant insists that he and his father made the arrangement agreed upon for the sole and single purpose of defrauding Mrs. Sackett out of her inchoate right of dower, but as the title to the premises was transferred from the father to the son by the means of a judicial proceeding instituted by a’ party who had a perfect right to enforce a lien on the premises, and Mrs. Sackett was brought before *255 the court by the service of due process, and the instigators of the movement did nothing, whatever, tending to deceive or mislead Mrs. Sackett, I am. of the opinion that the defendant is in no position to take advantage of the unfair scheme which he contrived and put on foot, for the purpose of defeating the promise which he made to his father for the benefit and advantage of his sisters.