Laubie, J.
This is a proceeding upon the part of the railroad company to reverse the judgment of the court below, in an action brought by Bishop to recover for personal injuries sustained by him in a collision on the road of the company., in the state of Pennsylvania. He was a railway postal clerk on one of the colliding trains.
*381 One of the grounds of error is that the court below refused to send its written charge to the jury. There was no request made of the court to reduce its charge to writing, and hence the parties were not entitled to demand, as of right, that it should be sent to the jury, and the court committed no error in refusing to send the charge to the jury, although it had voluntarily reduced it to writing, and read it to the jury.
The main question in the case, which has been very extensively argued and presented to us by counsel for each party, is as to the rights of Bishop while upon the train, under the laws of Pennsylvania.
The plainitff, in his petition, alleges, inter alia, that on the 7th day of December, 1895, and for a long time prior thereto, he was employed by the United States as a postal clerk, and was running as such clerk from the city of Cleveland, O., to the city of Pittsburgh, Pa., and return. That by some agreement, the terms of which are unknown to the plaintiff, and he is unable to set forth a copy of this agreement, the Pittsburgh & Lake Erie Railroad Co. had contracted to carry the mails between the city of Youngstown, O., and the said city of Pittsburgh. Also, for a valuable consideration agreed, and .bound itself by such contract, to carry the plaintiff so that he might discharge the duties which he contracted with said United States government to discharge; and that, by reason of the premises, said plaintiff was a passenger upon said train. That said defendant company owed him the highest degree of care. That on the 7th day of-December, 1895, while he was upon a train of defendant, in the cischarge of his duties, as aforesaid, such train collided near Wampum, Pa., with a freight train, it being a rear end collision, and that he sustained serious and permanent injuries by reason thereof. That this collision had occurred through the negligence and carelessness of the conductor of the freight train, and of the train dispatcher of the defendant’s road.
*382 The allegation in the petition as to the train dispatcher was eliminated from the case by a written withdrawal.entered upon the records upon the part of the plaintiff, and the case was tried solely upon the allegation of negligence of the conductor of the freight train.
In the answer the defendant admits that it is a corporation under the laws of the states of Ohio and Pennsylvania, and that its road extends from Youngstown, O., to the city of Pittsburgh, Pa., and beyond, And admits that on the 7th day of December, 1895, and prior thereto, plaintiff was in the employ of the United States government as a postal clerk, and as such was employed to work on and about a mail car on the defendant’s road, running between Youngstown, O., and Pittsburgh, Pa., and that while he was riding upon said car on said day, as such postal clerk, he was injured by reason of a collision of the engine of his train with the rear end of a freight train standing upon the track north of the passing siding at Wampum.
Further answering, it sets up that the defendant and the government of the United States had entered into a contract by which it agreed to carry the United States .mails from Youngstown, in the state of Ohio, to and from Pittsburgh, in the state of Pennsylvania, and that such contract was made in the state of Pennsylvania. That, under the provision of said contract, the plaintiff was to perform duties for the United States government in and upon the mail car of the defendant. That he entered into such employment, and under and by virtue of the contract of employment with the government of the United States,and under and by virtue of the contract between the United States government and the defendant, he was to perform his duties upon said train between these points in contemplation of the laws of the state of Pennsylvania, and thereby, impliedly, contracted to be amenable to said laws, so far as his rights and remedies, or any of them, while he was being so carried, we^e concerned.
*383 Further, that it was, at the time of entering into the said contract by said plaintiff, with the United States government, and long prior thereto, and still is the statutory law of the state of Pennsylvania, as provided by the act of the general assembly of said state, passed April 4, 1868, that:
“When any person shall sustain personal injury or loss of life, while lawfully engaged or employed on or about the roads, works, depots, and premises of a railroad company, or in or about any train or car therein or thereon, of which said person is not an employe, the right of action in all such cases against the railroad company shall be only such as would exist if such person were an employe; provided this section shall not apply to passengers.”
And the defendant further alleges that the Supreme Court of Pennsylvania, construing this act, in the case of Railway Company v. Price, 96 Pa. St., 206, decided, and such is the law of that state, that a mail agent or postal clerk, as the plaintiff was, under and by virtue of the provisions of that section, was not a passenger, and that under and by virtue of that statute, .he was to be regarded as an employe of the' company, having no more rights than an employe of the company, and under and by virtue of the laws of the state of Pennsylvania,as such employe, he was not entitled to recover for injuries sustained by the negligence of a fellow workman; that a conductor of the train and a postal clerk stood in the relation of fellow servants, and neither could recover for the negligence of the other as against the master.
Plaintiff, in the reply, alleges that the contract was made in the state of Ohio, and governed by the laws of that state; denies that it was made in Pennsylvania, or that he was not entitled lo the rights of a passenger under the laws of that state.
The statute of Pennsylvania was offered in evidenec by the defendant, and the decisions .of the state of Pennsylvania, construing the same and holding that a postal- clerk and a conductor are fellow servants, and for the negligence *384 of whom no recovery could be had against the company.
The case of the Pennsylvania Co. v. Price, which was offered in evidence, does expressly hold that a mail agent or postal clerk is not a passenger within the meaning of the act in question.
The syllabus of that case is:
“The Act of April 4, 1868, provides that when any person shall sustain any personal injuries or loss of life while lawfully engaged or employed on, or about the roads, works, depots, and premises of a railroad company, or in or about any train or car therein or thereon, of which company such person is not an employe, the right of action in all such cases against the company shall be only such as would exist if such person were an employe, provided this section shall not apply to passengers; held, that a route or mail agent in the employ of the United States post office department, while traveling on a railroad, in the performance of his duties, is not a passenger, within the meaning of the act.
“A passenger, in the legal sense of the word, is one who travels in some public conveyance, by virtue of a contract, expressed or implied, as the payment of fare, or that which is accepted as an equivalent therefor.
“A mere trespasser, or a person who steals a ride upon a trian, or who is employed thereon, is not a passenger, within the meaning of the act of 1868, nor entitled as such to protection.”
Upon the part of the plaintiff it is claimed that this decision was subsequently modified in the case of Spisak v. The Baltimore & Ohio Railroad Company, 152 Penn. St., 281.
We have examined this case carefully,and we are not able to agree with the contention of counsel in this respect, and cannot see that it in any sense modifies or changes the rule as laid down in the 96th Penn. State, in the Price case, as to a postal clerk.
In the case in the 152 Penn. St., referred to, it was held:
“If the place of an accident, where the person is injured, is clearly and for general purposes the road, works, depot *385 or premises of the railroad company, the person injured is a fellow servant of the employes of the railroad company within the meaning of the act. If he is lawfully engaged or employed on or about them, he is not a passenger.
“If the accident occurs in a place which is not exclusively, but only within a limited and statutory sense, the premises of the company, and the person injured is engaged in work which it is ordinarily the duty of the employes to do, he is a quasi-employe, within the' meaning of the act. But if the work has no relation to railroad work as such, and is connected with the railroad only by irrelevant and immaterial circumstances of locality, the case is not within the statute. ”
And it appears in that case the plaintiff was an employe of the Steel Company, to which the railway company was delivering freight; that the Steel Company owned some switches or tracks upon its own premises, and upon which the railway company delivered cars, and that on such tracks on the premises of the Steel Company, the accident happened. The court distinguished the case' from the Price case because of these facts, the place of the accident not being upon the road or premises of the railway company, and the plaintiff not having been engaged in work ordinarily done by employes of the railway company.
In the opinion of Mr. Justice Mitchell, it is said:
“The words of the act of 1868 are: ‘when any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company,’ etc In the first case that arose under the act, Kirby v. The Railroad Company, 76 Pa., 506, this court passed only upon its constitutionality, but the injury to the plaintiff happened on aside track, part of the road and premises of the defendant company. It was clearly within the express words of the act.’’
After quoting some other decisions, he continues:
“Upon the distinction .thus expressed, the cases divide themselves into two classes. „ In the first, the place of the *386 accident is clearly and for general purposes the road, works, depot or premises of the railroad company. In such case it is sufficient if the person injured is lawfully’engaged or employed in or about them, and is not a passenger. To this class belongs Kirby v. The Railroad Company, 76 Pa., 506, already referred to. The other class is where the accident occurs in a place which is not so exclusively and for general purposes, but only within a limited and statutory sense, the premises of the railroad company,
“In this class the nature of the employment at which the party injured was engaged at the time, becomes material. If it is business connected with the railroad in the sense that it is ordinarily the duty of the railroad employes, then while the party .is engaged at it, the statute treats him as a quasi-employe, and puts his rights upon the same basis.”
So that,even where the locality of the accident is not upon the road, works, depots or premises of the defendant company, but is only incidentally connected therewith, if the person be employed in the performance of duty ordinarily done by the railroad employes, he is still to be regarded, within the letter of the act as an employe of the company defendant. In no manner does this case at all affect the question as decided by the Supreme Court in the Price case; and we find it to be established as the law of the state of Pennsylvania, that a route agent upon the cars of a railroad company in that state is not to be regarded as a passenger, but as an employe of the company upon the train. And from what I have already said as to the law of Pennsylvania in regard to the right of recovery for injury occasioned by the negligence of a co-employe, it follows that if the law of' Pennsylvania is to apply to this case, there could be no recovery, as the accident confessedly occurred within the state of Pennsylvania, and while the plaintiff was in the performance of his duties as route agent, by reason of the negligence of a fellow-servant.
But the plaintiff claimed that this contract was entered into in the state of Ohio, and that the law of Pennsylvania *387 was not to be applied, but the law of Ohio, because where-the contract is made in one state, to be performed partly in that state and partly in another state, the rights of the parties are to be determined by the law of the state where the contract is made, as it is - indivisible, and the contract obligations of the parties cannot be permitted to be shifting according to the laws of the various states into which a portion of it may be transferred by reason of the fact that it is agreed to be in part performed in such states. The court did, in fact, so charge the jury. The court said to the jury:
“The first question to which your attention is called, and which it becomes your duty t.o consider and determine, is whether or not, the plaintiff was lawfully upon this train in pursuance of a contract made between the defendant and the United States government in regard to carrying the mail, and the plaintiff, as postal clerk, over its road, or with the plaintiff to carry him over the road., If you find that such contract was made and entered into, and that the same was not wholly to be performed within the state of Pennsylavnia, but was made in Ohio, to be performed in part in the. state of Ohio, or was made outside of the state of Pennsylvania, to be performed in part in the state of Pennsylvania, and part in the state of Ohio, then the plaintiff would not come within the terms and provisions of the act of the general assembly of Pennsylvania, to which your attention is called, and which is set out in the answer filed by the der fendant in this case, and he would be entitled to recover.”
Now,-it is to be observed that there was no evidence to show that the contract was made in the state of Ohio,and indeed, according to the evidence in the case, as shown by the bill of exceptions, it is clear that it was neither made in the state of Ohio, nor in the state of Pennsylvania.
The plaintiff, Bishop, resided in Solon, Ohio, as he stated, all his life, and he had received his commisison originally, or was appointed by the department at Washington, as route agent in-the southern part of this state upon some of the railroads’thereof; that he acted for a number of *388 years in that capacity on more than one road within the state, and finally was transferred to the defendant’s road, and a commission was issued to him to run upon that road, and this was the commission, as shown by the record:
Post Oeeice Department- — -United 'States oe America.
Office of Gen. Sup’t. R. M. S.
To whom it may concern:
Know ye, that the post master general has appointed the bearer hereof, Wilfred W. Bishop, railway postal clerk, on the line of the P., L. E. & W. railroads, which companies are requested to extend facilities of free travel to the holder of this commission between the points named on opposite page, when on duty, and when traveling to and from duty.
If fare is charged, take receipt.
James E. White,
Gen’l Supt. R. M. S., Washington D. C., 189 — . Approved: R. L. Wilson,
Post Master General,
That is the extent of the evidence of the plaintiff, as to any contract being made in the state of Ohio, and that relates, not to the contract between the government and the railroad company, but his own.
On part of defendant it is shown that a contract had been entered into between the railway company and the government for carrying of mail and mail clerks over the line of its road from Pittsburgh to Youngstown and return. That it had been made on application of the company to the department at Washington. And correspondence is shown, at least letters, upon the part of the company, to Thomas J. Brady, Second Assistant Post Master General, at Washington, in reference thereto. And again, that the general offices of the company were in Pittsburgh, in the state of Pennsylvania, From there correspondence was carried on with the post office department at Washington, for the purpose of securing this contract. After the company had *389 received the authority,as stated by Jones in his deposition, from the post master general, or an order to carry the mail, they issued this letter:
“Pittsburgh, Pa., April 28, ’79.
“W. G. Lovett, Esq.,
“Sup’t Railway Service,
“Cleveland, O.
‘•‘Dear Sir: — I have communication from Hon. Thos. Brady, 2d Asst. P. M. Gen.* ordering mail service on our line 1st prox.
“We will have mail car ready and attached to our train leaving here at 8:15 A. M. (Columbus time), on the morning of 1st, prox. I suggest that this car be run through to Cleveland, returning on train leaving Cleveland at 7:15 A. M.
“I will arrange for the delivering of mails at all offices inside the required distance. Will you arrange for those beyond?
“Please let me know if you will be ready, and if you desire any additional arrangements in this connection.
“Yours, very truly,
“W. C. Quincy,
“Gen. Man.”
Now, this was in pursuance of the contract made between the defendant company and the general government, through the post master general, and it was a mere announcement to the local supervisor of the railway service in Ohio, of the fact that the post master general had ordered the carrying of the mail, to begin on the 1st, proximo. It was not the making of a contract with the superintendent of mail service at Cleveland; that had already been done; the post master general’s order had been already given to the company,- and it had no tendency to show that the contract between the government and the railroad company was made in Ohio, but directly the opposite,
The Pittsburgh & Lake Erie Railroad Company had contracted to carry the mails from the city of Youngstown to *390 the city of Pittsburgh; and also for a valuable consideration agreed and bound itself by said contract to carry the plaintiff, so that he might discharge the duties which he contracted with the United States government to discharge. No one in the service of the United States government has any power or. authority to make contracts for the transmission of mails and postal clerks, but the post master general. And it is to be officially noticed that, his office and place of business is in the city of Washington, in the District of Columbia, at the headquarters of the government, as the evidence in the case shows. The court, therefore, committed error in submitting to the jury whether the contract was made in the state of Ohio.
The court further charged:
“Stated differently, if you find that the plaintiff, at the time he received his injury, was lawfully upon the.road of the defendant, under á contract, either with the United States government or the plaintiff himself, to carry him from Cleveland, O., to Pittsburgh, Pa., and return, the contract not being made in Pennsylvania and not to be wholly performed within the state of Pennsylvania, and he was engaged thereon as a postal clerk only, the provisions of that act would not apply, even though he may have been injured whilst upon the road of the defendant. ”
Again:
“If he was lawfully upon it by virtue of a contract made between the defendant and the United States government, or himself, by which he was entitled to passage, asa postal clerk,and was simply so engaged upon that train, and that contract was not made in the state of Pennsylvania, and was not to be wholly performed therein, then he would be entitled to recover for whatever injuries he actually sustained, resulting from the negligence and want of care of the conductor of this freight train with the train upon which plaintiff was riding collided. ”
Two propositions are embraced in this part of the charge. One is, that the plaintiff would be entitled to recover if he *391 had entered into the contract himself with the railroad company to carry him. There was no evidence or claim of that, and the court erred in submitting it to the jury. The other proposition is, if the contract was made outside of the state of Pennsylvania, whether made in Ohio, or not, then the law of Pennsylvania would not govern, and the plaintiff would be entitled to recover if all other facts and circumstances were properly shown to exist.
Now, construe this charge with reference to the evidence, and what does it mean, and what must it have meant to that jury? It means that if the contract between the general government and the railroad company was made neither in Pennsylvania, nor Ohio, but at the seat of the general government, the statutes of Pennsylvania would not apply, nor the law of Pennsylvania, and plaintiff would be entitled to recover, without any inquiry as to what the law of the United States was as to the effect of the contract.
Counsel for the parties presented this case, and their ideas upon it at considerable length, both orally and in writing, and apparently exhausted the books in an attempt to find authorities that would apply to the case. At first we assumed that counsel had found all authorities bearing upon it, and we considered the question in that light. And I must say that I had arrived at the conclusion that there was no prejudicial error in this charge in any respect; that the statute of Pennsylvania had no application to the'case; that it was not within the province of the legislature of the state of Pennsylvania to declare a man not to be entitled to the rights of a passenger in that state if he entered upon the train in another state to be carried free, or under any contract, to which he was a privy, for the payment of his fare.
And upon subsequent examination I find the Supreme Court of the United States has declared that, by the common law, the law of the place where a contract is made governs its nature, obligation and interpretation, unless it appears *392 that the parties, when entering into the contract, clearly manifest a mutual intent to be bound by the law of some other country or state; and the fact that the contract is to be partly performed in another country or state, is not of itself sufficient to establish such intent. Liverpool and Great Western Steam Co. v. Phoenix Insurance Co., 129 U. S., 397, 455, 458, in which the ruléis fully discussed, and the English and American cases examined and commented on; and Cox et al. v. U. S., 6 Peters, 172, approved. In that case it was held that a contract between the United States (by the Navy Department), and private persons, in regard to services tc be performed for the United States, is governed exclusively by the rules of the common law, and not by the statutes of the state were it is to be performed —that it is immaterial where the services are to be performed, in so far as it affects the nature, effect and interpretation of the contract.
I had also assumed that the constitution of the United States protected a citizen thereof,as Bishop was, from having his privileges and immunities interfered with or abridged by any state, or deprived of his life, liberty or property without due process of law.
The first subdivision of the fourteenth amendment of the constitution of the United States provides expressly, that no state shall by law abridge the privileges and immunities of any citizen of the United States, nor shall any state deprive any person of his life, liberty or property, without due process of law; and this, too, although he may be a citizen of such state. This prohibits “any encroachment by the states upon the fundamental rights which belong to every citizen as a member of society. * * * it secures the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. ” United States v. Crukshank, 92 U, S., 554.
*393 Here, Bishop would be deprived of his right of property in his person, without due process of law, and solely by an arbitrary exercise of the power of government for the especial benefit of a railway corporation.
As the defendant was bound by its contract with the United States to carry the plaintiff from Youngstown to Pittsburgh, I thought it was bound to carry him safely, as a passenger for hire, and that his privileges, or rights, or status as such passenger, could not be abridged or taken from him by the legislature or the courts of Pennsylvania on any pretext whatever; that he was a party to such contract, and had a right to stand upon it.
As illustrative of the last proposition, take the case of Emmitt v. Brophy, 42 Ohio St., where the court held that where a bridge company sold its bridge to the county commissioners, and a party, the principal stockholder to whom the consideration is paid, agreed by bond to pay off all debts and liens against the bridge company, that any creditor or any one holding a lien was entitled to sue upon the contract although his name was not mentioned in it, and although he may not have been known to the parties contracting at the time to be a creditor or lienholder, because he was a privy to such contract, as it was made in part for his benefit. To the same effect is Railway Company v. Keokuk Bridge Co., 131 U. S., 371; 155 U. S., 156.
I do not regard it as at all mitigating against this rule that the contract is principally for the benefit of the party making it. It may be principally for his benefit, but if it is incidentally for the benefit of another, that other is privy to it, and would be entitled to sue upon it, Hendricks v. Lindsay et al., 93 U. S., 149.
Section 4000, Revised Statutes of the U. S., provides:
“Every railway carrying the mail shall carry on any train which may be run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same.”
*394 The government, therefore, pays for the carrying of the person as well as the mail itself — the consideration is in solido. One party agrees to pay.so much money, - and the other party agrees to carry the mails and mail agent. The words “without extra charge therefor,” refers more particularly to the mailable matter directed to be carried than to the person in charge thereof.
Again, section 4005.
“The length of cars required for such post office railway car service shall be determined by the post office department, and all such cars shall be properly fitted up, furnished, warmed and lighted for the accommodation of clerks to accompany and distribute the mails.”
Now, with a contract like that, paying for the carriage of the clerk and providing that certain accommodations shall be furnished by the railway company for his general comfort, that he is not a party to the contract, I think cannot in any sense or reason be maintained.
Supposing the company failed to warm up the car on a zero day, and his health was injured thereby, would such a clerk not have a remedy upon the contract?
But it is useless to discuss this question further, as this court is not-in condition to upset the Supreme Court of the United States. In examining the decisions and reports of the Supreme Court of the United States, I find that the case of the Pennsylvania Railroad Company v. Price, went to that court, and was there decided in conformity to .the holding of the Pennsylvania court — that a postal clerk in cars ■carried under contract with the government is not a passenger. Price v. Pennsylvania R. R. Co,. 113 U. S., 218.
The Syllabus is:
“A person traveling on a railroad in charge of mails, under the provisions of section 4000, Revised Statutes, does not thereby acquire the rights of a passenger, in case he is injured on the railroad through the negligence of the company's servants, ”
*395 Mr. Justice Miller delivered the opinion of the court He recites the facts and continued:
“The plaintiff argues here, and insisted, throughout the progress of the case in the state courts, that by reason of certain laws of the United States as applied to the facts found in the verdict of the jury," the decedent was a passenger, and the Supreme Court erred in holding otherwise.
“These laws are thus cited- in the brief of plaintiff’s counsel:
“Act March 3, 1865, section 8, 13 Stat., 506, provides that for the purpose of assorting and distributing letters, and other matter in railway post offices, the post master general may, from time to time, appoint clerks who shall be paid out of the appropriation for mail transportation.
“Section 4000, Revised Statutes, requires that every railway company carrying the mail shall carry on any train which may run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same.
“We do not think these provisions either aid or govern the construction of the proviso in the Pennslyvania statute.
“The person thus to be carried with mail matter, without extra charge, is no more a passenger because he is in charge of the mail, nor because-no other-compensation is made for his transportation, than if he had no such charge, nor does the fact that he is in the employment of the United States, and the defendant is bound by contract with the government to carry him, affect the question. It would be just the same if the company had contracted with any other person who had charge of freight on the train to carry him without additional compensation.’’
And with that I perfectly agree. If a party makes a contract with a railroad company to transport his freight and his servant, I have understood that the proper holding should be such servant is a passenger; the consideration is paid in his interest and for his benefit; he is a privy to the contract, and entitled to all the rights of a, passenger, so far *396 as being carried safely is concerned. And I cannot comprehend the application made of this doctrine to the case in question, when I consider that the same court had previously held, in Railroad Company v. Lockwood, 17 Wall., 357-384, that a drover traveling on a free pass, for the purpose of taking care of his stock on the train, is a passenger for hire; and in Railroad Co. v. Derby, 14 How., 486, and The Steamboat New World v. King, 16 How., 469-474, that a person lawfully on the cars or boat, riding on invitation of an officer, or on a free pass, is a passenger, and entitled to all the rights and privileges of other passengers, “as resting not only on public policy, but on sound principles of law.”
Justice Miller proceeds:
“The statutes of the United States which authorize this employment and direct this service do not, therefore, make the person so engaged a passenger, or deprive him of that character, in construing the Pennsylvania statute. Nor does it give to persons so employed any right, as against the railroad company, which would not belong to any other person in a similar employment, by others than the United States.
“We are therefore of the opinion that no question of federal authority was involved in the judgment of the Supreme Court of Pennslyvania, and the writ of error is accordingly dismissed. ”
That settles for us the whole question in this case, holding as we do that the contract made with the general govenrment is governed by the law of the United States. And although the point was not examined at any length by that court, and is apparently a first blush decision, we are not in a position to overrule it, and therefore we are compelled to hold it was error for the court in this case to charge that if the contract was made outside of Pennsylvania, the statute of Pennsylvania would not apply; and *397 the ease is reversed and remanded to the court below.
J. P. Wilson, for Plaintiff in Error.
P. B. Murray and Wm. S. Anderson, for Defendant in Error.