## LAMBORN et al. v. WM. M. HARDIE CO.

(Circuit Court of Appeals, Sixth Circuit. October 8, 1924.)

No. 3927.

**1. Estoppel ⬡⟲95—Buyer held estopped to deny sellers' right to change declarations of ship by which goods were to be shipped.**

Buyer of goods to be shipped by steamer, under contract entitling sellers to later declare steamer, who remained silent on receipt of letter from sellers declaring the substitution of a certain steamer for previously declared steamer, and stating that "this cancels all previous declarations," *held* estopped from denying sellers' right to change declarations and from refusing goods on ground thereof; sellers having delivered to other buyers goods on such first vessel in reliance on buyer's acquiescence.

**2. Estoppel ⬡⟲95—May arise from silence.**

Estoppel may arise, not only from affirmative representation, but from silence, if there was a fairly clear duty to speak, and if the other elements of estoppel exist.

**3. Frauds, statute of ⬡⟲131(1)—Incidents of performance of contract may be changed by parol.**

Though contract required by statute of frauds to be in writing may not be changed as to subject-matter by parol, so that action will lie on altered contract, the incidents of performance may be so changed, and defendant, who is sued on the original written contract, cannot say that plaintiff has not performed, when only variation in performance is in particular to which defendant has agreed, though by parol.

**4. Estoppel ⬡⟲95—Sellers, who changed declaration without disclosing expected extent of delay, held not estopped to require acceptance of goods shipped in declared steamer.**

Sellers of goods to be shipped by steamer under contract entitling sellers to later declare steamer were not estopped to insist on buyer's acceptance of goods shipped in steamer declared in letter canceling previous declarations by failure to disclose in letter expected extent of delay, in the absence of a showing that sellers knew that there would be extraordinary delay, and request by buyer for information relative thereto.

In Error to District Court of the United States, for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Arthur H. Lamborn and others against the Wm. M. Hardie Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

Clan Crawford, of Cleveland, Ohio, and Louis O. Van Doren, of New York City

(Van Doren, Conklin & McNevin, of New York City, Squire, Sanders & Dempsey, of Cleveland, Ohio, and Alfred C. B. McNevin, of New York City, on the brief), for plaintiffs in error.

Frank X. Cull, of Cleveland, Ohio (Bulkley, Hauxhurst, Jamison & Sharp, of Cleveland, Ohio, Samuel Williston, of Cambridge, Mass., and Chamberlin, Kafer & Wilds, of New York City, H. Austin Hauxhurst and J. Hall Kellogg, both of Cleveland, Ohio, and Lester Kafer, of New York City, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Plaintiffs below, plaintiffs in error here, were sugar brokers. Defendant was a large consumer. In the summer of 1920, plaintiffs sold to defendant 5,000 bags of Java sugar, at a stated price, deliverable f. o. b. cars Philadelphia. The contract did not fix the time of delivery, except as it provided that the sugar should be shipped during August or September by steamer from Java. A further provision was:

"Names of such steamer or steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of liability under this contract."

When eventually, in February, 1921, the sugar was ready for defendant at Philadelphia, acceptance was refused. Plaintiffs sold it at the market price, and brought this action to recover their loss as compared with the contract price, which loss was said to be about $160,000. At the end of a jury trial both parties agreed that it was a case for a directed verdict one way or the other, and the court found for defendant.

It appears that large quantities of sugar, purchased by plaintiffs in Java, were loaded upon various boats sailing therefrom during July and August. Among these steamers were the Washington (Maru) and the Chifuku (Maru), each of which carried a quantity more than sufficient to satisfy defendant's contract. In August the sugar market in the United States broke, and the price fell rapidly. The parties, who either directly or through brokers had long-standing and friendly relations, were in frequent communication regarding this contract. It was evident that defendant must suffer a burdensome loss, and it wished to postpone its incidence as long as possible.

By a contract negotiated in September and closed October 28th, the sugar to arrive under the contract was sold by defendant to Howell at such a price that defendant's loss, after paying plaintiffs, would be substantially $120,000. It continued to desire as much delay as possible before maturity of this obligation; accordingly, and in October, and after all steamers among which declaration could be made were afloat, it consulted with plaintiffs as to the expected arrival dates, and asked them to declare the steamer which would come in last. The plaintiffs were willing, in view of the friendly relations, to take this course, and in good faith believing that the Washington would be the last to arrive plaintiffs wrote on October 28th to defendant, declaring that steamer.

On November 17th plaintiffs learned that an accident had occurred to the Chifuku, which would necessitate a delay for repairs and would postpone its arrival an unknown, but substantial, time beyond that of the Washington. Accordingly, on November 26th, plaintiffs wrote the defendant:

"On [Oct.] 28th we declared to you the S/S Washington Maru as the one to carry your Java sugars purchased under date of May 4th and July 19th. Knowing that you are desirous of having these sugars delayed as long as possible, beg to declare to you in substitution the S/S Chifuku Maru. This cancels all previous declarations."

Defendant made no reply. The Washington arrived on December 19th. Nothing was said or done by either party indicating the existence of any interest in her cargo by the defendant or Howell, its vendee. On December 23d defendant released Howell from the contract of October 28th, and received for such release substantially $40,000 in cash, this being the amount of the decline in the market price on the amount of sugar covered thereby from October 28th to December 23d. The Chifuku arrived February 4th. The plaintiffs offered to defendant the contracted sugar therefrom; but it refused to accept, and this suit was brought.

[1] It is insisted by plaintiffs that it was their right, at any time before the arrival of the Washington, to change their declaration and elect that the contract be applied to sugar on board the Chifuku. Defendant denies their power to change the declaration which they first made. We do not find it necessary to pass upon this question, either as one of general rule or as it may be modified by the peculiar facts; for we conclude

that defendant is estopped to deny the effectiveness of the substituted declaration.

[2] It is well settled that estoppel may arise, not only from an affirmative representation, but from silence, if there was a fairly clear duty to speak, and if the other elements of estoppel exist. We assume, for the purpose of this opinion, that in a typical case of such a ship declaration, once made, a later notice from the vendor changing it, it would be ineffective, and there would be resting upon the vendee no duty to speak which would make a basis for considering his silence equivalent to his consent. This concession does not reach the present case. Prior to October 28th defendant's frequently expressed desire for the greatest possible delay in delivery, was obviously based upon two grounds: First, the burden of raising the money to pay the loss; and, second, the belief that the loss would not be increased—and might be lessened—during the desired delay. On October 28th defendant "pegged" its loss. As it bought the sugar at 22 cents and sold to Howell at 11 cents, any subsequent rise or fall in the market price did not change defendant's loss under this contract, and it continued to desire delay in maturity only to ease its financial burden. Plaintiffs were fully advised by defendant of this resale, and were urged to be lenient in collection of the balance when the time came for payment. To favor defendant in these particulars, plaintiffs selected the Washington as the carrier of the contract sugar, because it was to be the latest to arrive.

If motive were material, there is no suggestion of any other motive on the plaintiffs' part. Between October 28th, when plaintiffs declared the Washington, and November 26th, when they substituted the Chifuku, nothing occurred to advise plaintiffs that defendant had changed its desire to have the latest possible arrival; nor is there anything in the record to indicate such a change. Every inference is to the contrary. In this situation, plaintiffs' letter of November 26th is in substance and effect: "We find that we can better comply with your request for delay by substituting the Chifuku, and accordingly we do so."

The letter bears this aspect to any one familiar with the facts, and it must have so appeared to the defendant when received, and plaintiffs were justified in supposing that defendant still wished postponement and in proposing to act accordingly. It is true, as now appears, plaintiffs had another motive in thus proposing substitution, based

on its similar sugar sales contracts to the American Stores Company[1] (and others) and secured by what were practically cash deposits in bank, but which by their terms were to be held by the bank only until January 1st. The Washington probably would arrive before that date. The Chifuku would not. By getting the Washington sugar free to deliver on these contracts, plaintiffs would get advantage of the cash security deposits, instead of being compelled to collect. We do not see that the existence of this motive on plaintiffs' part can be controlling. The defendant did not know of it, but knew only the plaintiffs' act—the substituted declaration. Defendant's duty to reply, if it existed, was to be determined by this and all the other acts of the transaction, and not by plaintiffs' motive.

Reviewing this transaction, and observing that the substitution made by the letter of November 26th purported to be in compliance with defendant's wishes, that plaintiffs were justified in so regarding it and had no reason to think it would be unacceptable, and that defendant knew this was plaintiffs' attitude, we cannot escape the conclusion that ordinary good faith and fair dealing required the defendant, if it had any objection, to make prompt reply and say so, and that by its silence plaintiffs were led to believe that it acquiesced.

As a reason why no reply or objection was necessary, defendant says that the letter of November 26th was not a proposal to substitute, but a notice of a finished substitution. This is not a controlling circumstance. True, the declaration of the Washington sugar to the American Co. had been made on the 23d, but the letter of the 26th used the present tense: "We beg to declare in substitution. * * * This cancels all previous declarations"—and the references are to pending and incomplete transactions. There could be no final delivery of any of the sugar until the future arrival of the first boat. If there was objection to this substitution, plaintiffs might well have the same right to make another declaration restoring the first situation. The form of the letter and the fact—unknown to defendant—of the November 23d declaration do not, in our judgment, detract from the duty of the defendant to make prompt objection if it was not satisfied.

Having thus found the existence of what was, in effect, a representation by defendant

---

[1] We hereafter use the name of the "American Co." as indicating this class.

that the Chifuku sugar would be satisfactory, we must see whether plaintiffs acted on that representation to their prejudice. That action was taken, and that it was irrevocable and prejudicial in the sense now involved, are not disputed. On December 19th the Washington arrived, and all the sugar on board was by the plaintiffs promptly distributed to the American Co., to which it had been allotted by the plaintiffs in connection with their declaration of November 26th to defendant. Performance of the contract in suit, as attached by the letter of October 28th to the Washington sugar, thus became impossible.

So we come to the final and controlling question, whether the action of the plaintiffs in thus delivering the Washington sugar was taken in reliance upon and as the result of—"induced by"—defendant's representation. The District Judge was persuaded that it was not. The fundamental error of the argument successful below is that it assumes that plaintiffs' claim is that their redeclarations of November 23d and 26th were induced by defendant's conduct, and it then proceeds to demolish this claim; but it attacks a man of straw. If there was conduct which prejudicially misled, it was that later silence and acquiescence which allowed plaintiffs to rest upon and carry out the redeclaration of November 23d. If all that appeared were that the redeclaration of November 23d had been made, we would be driven to the consideration whether the plaintiffs' legal right to redeclare continued, and whether, if defendant had objected, they would have had the right to cancel their second declaration of the Washington sugar, and make a third one to the defendant again; but that need not be considered, because it also appears that the American Co. protested against the declaration to it of the Washington sugar, and proposed to refuse delivery from that boat.

It is therefore clear that on say the 12th of December plaintiffs were in this position: On October 28th they had declared the Washington sugar to defendant; on November 26th they had canceled this declaration, remitted the defendant to the Chifuku, and assigned the Washington sugar to the American Co. After a few days later—say since December 5th—they had been entitled to consider that defendant was assenting. Then on December 12th they were confronted with the American Co.'s refusal to accept the reassignment. The question then was: "Shall we stand upon our redeclarations and persuade or force the American Co. to take

this earlier delivery of the Washington sugar, or shall we yield to the American's objection, abandon our redeclarations of November 23d and 26th, and persuade or force the defendant to take the Washington sugar, and thus accept an earlier delivery than that upon which it is now depending?"

It is obvious that defendant's supposed existing acquiescence and willingness to take the Chifuku sugar were an essential element in this problem, and that if it had been known that defendant was still claiming the Washington sugar, and would claim to be discharged from its contract if it did not get that sugar, the problem would have been vitally different. On the one side, plaintiffs would be risking their entire $160,000 claim against the defendant; on the other side, they would risk, not their claim against, but only their security from, the American. They concluded that they would accept the first alternative in the stated problem, and, upon the Washington's arrival, they acted on this conclusion. For a jury to decide now what the plaintiffs would have done if the problem had been different is plainly to speculate on a probability; and rights may not ordinarily stand or fall on such a speculative basis.

In Redgrave v. Hurd, L. R. 20 Ch. Div. 1, 21, Sir George Jessel said: "If it is a material representation calculated to induce him to enter into the contract, it is an inference of law that he was induced by the representation to enter into it." This was doubtless a dictum, and it is too broad to apply to all cases. It is sufficient for the purposes of our case to say that, even if this presumption is always one of fact and is rebuttable, yet unless it is rebutted it must prevail, and that a speculative doubt is not a rebuttal.

In Ewart on Estoppel, and in connection with a discussion of the principles involved in estoppel "by lulling to rest," it is said (page 133):

"'Lulled into Security.'—It is frequently said that a misrepresentation must have been 'acted upon' in order that it may produce estoppel. That is not quite accurate; for, if the misrepresentation arrested action, it would have the same effect. A change of position—relative position—is the requisite. 'It is not necessary that a party should act affirmatively upon a declaration to claim an estoppel. If he has not acted in reliance upon it, but has means in his power to retrieve his position, and, relying upon the statement and in consequence of it, he refrains from using these means, his claim

would be upheld.' See cases cited. There are many cases of estoppel in which a person has been 'lulled into security' and has 'rested satisfied'—cases in which he has not parted with money or property on the faith of the representation, but in which he has lost some chance of recovering it." * * * Page 145.

"In a great many cases it is exceedingly difficult to ascertain whether, had the truth been known, the action of the person deceived would have been altered. In such cases this at least may be said: that the position of the estoppel asserter was necessarily affected to the extent that he was deprived of his right of consideration. This itself, in a doubtful instance, may be thought to be a sufficient change of position within the rule. In one case, Turner, L. J., said (Traill v. Baring, 33 L. J. Ch. 521): 'Had this representation of what had occurred, and of the change of intention on the part of the defendants, been communicated to the plaintiffs, it is impossible to say what course the plaintiffs would have pursued—whether they would, or would not, have accepted the policy. They might have done so; but it is equally clear they might not; and we can not say whether they would or would not; but it was to them that the communication should have been made, in order that they might exercise their option upon the subject.' "

Our conclusion that the situation on December 12th, as we have recited it, was sufficient to raise an estoppel against defendant, is supported by the leading English and American cases discussed in the text-book cited, but especially by the House of Lords in Smith v. Kay, 21 Bevan, 522, and by the Supreme Court of the United States in Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811. Counsel undertake to distinguish the last case, but we think unsuccessfully. The bank depositor, who had not with sufficient diligence objected to false charges made against him by a dishonest employé, was held thereby estopped to question the charges, and it was considered not to be a material fact that the employé had no property out of which the bank could have collected the defalcation, if it had been promptly advised. Paraphrasing the language of Mr. Justice Harlan on page 115 (6 Sup. Ct. 665), it may be said in this case that "as the right of plaintiffs, on December 12th, to seek a cancellation of their redeclarations of November and the enforcement of the original declarations, was in itself a

valuable one, it is sufficient if it appears that the plaintiffs, by reason of the silence of the defendant, were prevented from promptly, and it *may be* effectively, exercising it." [2]

We do not overlook that the judge was acting as a jury, and that if there was any evidence which would have supported a verdict that plaintiffs, in their supposititious conclusion of December 12th, did not materially rely on defendant's silence, then the judge's finding to that effect must stand. If there were opposing presumptions or inferences to be balanced, that would end the matter. There are not. On one side is a presumption of fact, persuasive and indeed so forcible as to be almost violent; on the other side, only a guess as to what the party might have done under a situation that never came into existence. This speculative possibility is not substantial evidence.

The difference is well illustrated by comparing Crary v. Dye, 208 U. S. 515, 28 Sup. Ct. 360, 52 L. Ed. 595, a case upon which defendant puts reliance. A mining claim which had belonged to Dye had apparently passed by judicial sale to his creditor, from whom it had been purchased by Crary. Dye brought ejectment, claiming that the judicial sale was invalid. To his defense which asserted the sale's validity Crary added a claim that Dye was estopped, because he had told Crary that the latter's vendor was the owner. Evidently Crary's decision to buy depended upon his conclusion as to the state of the title. On that subject, men customarily examine the record and take the opinion of counsel. Crary had done both, and had thus been informed that the title was good. Under these circumstances there was a mere possibility that Dye's confirmatory statement would have had any material effect; all the natural presumptions were the other way, and the court so found.

However, Crary v. Dye should be distinguished upon another ground. Justice McKenna (page 524 [28 Sup. Ct. 360]) placed final reliance on the application of the familiar rule of estoppel that if the representation is concerning a subject as to which the other party has equal, or ample other, means of information, the law will not imply that degree of materiality and reliance upon the representation which is necessary to create an estoppel. In that case, the rep-

[2] See, also, Knights v. Wiffen, L. R. 5 Q. B. 660; Reynell v. Sprye, 1 De G., M. & G. 658, 707; Dixon v. Kennaway, [1900] L. R. 1 Ch. 833; Hendrick v. Lindsay, 93 U. S. 143, 148, 23 L. Ed. 855.

resentation was as to the title. It was wholly disclosed by the official record, and after examination of this, Crary knew as much about it as Dye. In our case, the representation was that defendant was content to take the Chifuku sugar. Upon this subject, plaintiffs had no other means of information. When compared from this point of view, not only Crary v. Dye, but many, if not all, of the cases relied upon by defendant concerning materiality and inducement are found to be not pertinent:

The argument that plaintiffs did not testify that, in their conclusion and action, they relied upon defendant's silence, does not impress us. To the question, if asked, upon what they relied in redeclaring, it is evident they must have answered they relied upon three things: First, their supposed right to do so; second, their collateral advantage as to security; and, third, the defendant's supposed approval. If, then, they had been asked what they would have done if defendant had not acquiesced but had protested and indicated a controversy, the only possible answer would have been, "we do not know." Indeed, such a question would have been objected to by defendant and the court would have ruled it out.

The District Judge also thought that because plaintiffs knew that defendant, on October 28th, had sold its sugar to Howell, plaintiffs thereby had notice that defendant would insist upon sugar from the Washington. In so far as this assumes (if it does) that the defendant had made a sale to Howell which it could perform only by delivering the Washington sugar, the assumption was an error of fact. The contract between defendant and Howell—which was offered in evidence—shows that it could have been performed by defendant just as well with sugar from the Chifuku as with that from the Washington. In so far as consideration of the Howell contract or defendant's rights assumes that it would be unfair for plaintiffs to make this shift from the Washington to the Chifuku, because either defendant or Howell would be damaged, the assumption also is erroneous. Any damage, by postponing the delivery date, was a contingency to be balanced off against the contingency that the market would rise instead of falling further, and against a delayed maturity of whatever damage there was. Plaintiffs had no reason to conclude that either defendant or Howell would prefer, or benefit by, a delivery which might be and was at the end of December rather than one which might be and was six weeks later.

[3, 4] While it is true that a contract required by the statute of frauds to be in writing may not be changed as to its subject-matter by parol so that an action will lie upon the altered contract, yet incidents of performance may be so changed, and a defendant who is sued on the original written contract will not be heard to say that plaintiff has not performed, when the only variation in performance is in a particular to which defendant has agreed, though by parol. This principle controls the question as presented in this case. See Hickman v. Haynes, L. R. 10 C. P. 598, 603; opinion of Cardozo, J., in Imperator Co. v. Tull, 228 N. Y. 447, 457, 127 N. E. 263; Smiley v. Barker (C. C. A. 8) 83 Fed. 684, 686, 687, 28 C. C. A. 9. Nor is there any counter estoppel, as claimed, through plaintiffs' failure to disclose, in the letter of November 26th, the expected extent of the delay to the Chifuku. There is nothing to indicate that plaintiffs then knew that there would be extraordinary delay. Defendant indicated no desire for information.

For the reasons stated, the judgment must be reversed, and the case remanded for a new trial. The conclusion, that plaintiffs had a right to and did rely upon defendant's silence far enough to raise an estoppel, is that of a majority of the court.