UNITED STATES v. HOLLAND–AMERICA LINE.

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)

No. 121.

1. ALIENS (§ 53*)—IMPORTATION—SUPPORT PENDING EXAMINATION—CONTRACT.

The immigration commissioners having threatened to cause the alien immigrants arriving at New York to be inspected on board their respective vessels in order to compel defendant steamship company to comply with a rule requiring it to pay expenses of aliens pending examination and entry or deportation, defendant wrote the commissioner that "until the matter was decided differently by proper authority it would continue to pay the cost of maintenance pending examination." After this the question was submitted to the Secretary of Commerce and Labor in another case, and he decided in favor of the steamship company and against the United States. *Held*, that such determination was a different decision by proper authority within defendant's letter, and it was therefore under no contract liability to continue to pay such expenses.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

2. ALIENS (§ 53*)—IMMIGRATION—EXAMINATION—COST OF MAINTENANCE—LIABILITY OF STEAMSHIP COMPANIES—STATUTES—CONSTRUCTION.

Immigration Act Feb. 20, 1907, c. 1134, § 16, 34 Stat. 903 (U. S. Comp. St. Supp. 1911, p. 508), provides that steamship companies importing aliens shall be liable for the detention and maintenance of immigrants landed temporarily for examination at places where they remain in the company's charge, and then declares that, when the government uses a suitable building for detention and examination, the immigration officers shall take charge of them and the company shall be relieved of responsibility thereafter for their detention unless the immigrants are returned for deportation. Section 19 provides that in case of immigrants brought to the United States in violation of law the steamship company shall pay the cost of their maintenance while on land as well as the expense of their return, and makes the master or owner of the vessel guilty of a misdemeanor if he shall make any charge for the return of such aliens or shall take any security from him for the payment of such charge. *Held*, that suitable buildings having been constructed at Ellis Island in New York Harbor for the examination of incoming aliens, which buildings are supported by the immigration head tax, where aliens are landed at such island and are detained for treatment either in hospitals there or in private hospitals on shore pending· determination of their right to enter and are subsequently admitted, the aliens during such time are not "in charge" of the steamship companies, which are not liable for their maintenance during such period.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against the Holland-America Line. Judgment for defendant (205 Fed. 943), and the United States brings error. Affirmed.

H. Snowden Marshall, U. S. Atty., and A. S. Pratt, Asst. U. S. Atty., both of New York City.

L. H. Beers, of New York City, for defendant.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WARD, Circuit Judge.   The United States brought this action to recover expenses incurred for maintenance and medical care and treatment of certain alien immigrants afflicted with diseases not warranting deportation, brought to this country by the defendant, while held for examination as to their right to enter.   All of them were properly brought here and were subsequently admitted.   As at that time there was no hospital for contagious diseases at Ellis Island, such of them as were so afflicted were sent to state hospitals under contracts with the government.   The others were sent to the hospital at Ellis Island. The cause was tried before Judge Mayer upon an agreed statement of facts, a jury being waived; and he entered judgment in favor of the defendant, dismissing the complaint.   The government takes this writ of error.

The complaint rests the right to recover upon two grounds:  First, that these expenses are imposed upon the defendant by the Act of February 20, 1907;   second, that the defendant has agreed to pay them.   Taking up the latter cause of action first:  The immigration authorities, under section 22 of the act authorizing them to make rules "not inconsistent with law," adopted a regulation to the effect that these expenses should be paid:

"(4) By steamship companies.—Aliens not falling within any of the foregoing classes whom it is necessary for any reason to hold or to treat in hospital pending determination of right to land, or awaiting deportation under order of rejection of a board of special inquiry or of the department (sec. 19).

"(d) Covering cases of the character mentioned in class 4 of the preceding paragraph, bills for hospital treatment and maintenance shall be rendered mouthly by hospitals against the steamship companies responsible, through the office of the commissioner of immigration or inspector in charge, the latter's approval to be attached to the bills, if found correct, before forwarding them to the companies for settlement.   Officers of the immigration service will in all such cases look to the steamship companies for settlement of the hospital bill.   If any steamship company refuses to pay such bills rendered with the approval of the immigration officials, it will, of course, be necessary to require thereafter that all aliens brought by the vessels of such company shall be held on board ship until their applications for admission have been finally adjudicated."

[1] The steamship companies always protested against this rule as not consistent with law and finally refused to pay.   Thereupon the immigration commissioner wrote a letter dated July 21, 1894, to the defendant, the last clause of which is:                                          \

"It now becomes my duty to execute the departmental instructions above recited, and I hereby give notice that on and after Monday, July 23, 1894, I shall cause all alien immigrants arriving at this port to be inspected on board their respective vessels, or at the docks, as expeditiously as possible, causing as little delay and inconvenience as the proper discharge of my duties will admit of, instead of bringing such alien immigrants to Ellis Island for inspection, as heretofore.   But passengers by such lines as have complied with the law and the rules and regulations of the Treasury Department will be received at Ellis Island and there inspected in accordance with the practice heretofore prevailing.

"I should be glad to receive an early reply stating the attitude which you desire to assume with reference to the subject of this letter."

This was followed by further correspondence, resulting in a letter from the Netherlands-American Steam Navigation Company, the predecessor of the defendant, dated July 25th, as follows:

"In reply to your yesterday's favor I now beg to inform you, that the Netherlands-American Steam Navigation Company will, until the matter is decided differently by proper authority, continue to pay the cost of maintenance, pending examination at Ellis Island, of all immigrants brought by their steamships to the port of New York, and that we are ready to give bond to that effect.

"Please inform me, if this meets your requirements, so as to secure the examination of immigrants arriving by our steamers at Ellis Island as heretofore and oblige."

The government being satisfied with this letter, no bond was ever given.

Early in 1909 the Cunard Line, by an appeal from a decision of the commissioner of immigration at New York, submitted the question to Mr. Straus, then Secretary of Commerce and Labor, in the case of expenses incurred in connection with a family named Toth. Just before leaving office he decided in favor of the company, but none of his successors has followed his decision.

September 16, 1909, the companies, relying upon this decision of Mr. Straus, notified the immigration authorities that they would not longer "be responsible for such expenses except for a period long enough to enable the examining medical officer to determine definitely the nature of the alien's affliction." This we think was quite in accordance with the defendant's undertaking in its letter of July 25th. The matter had been "decided differently by proper authority," viz., Secretary Straus, and the United States cannot sustain its claim upon the second cause of action.

To escape the alternative presented by the rule, of having all immigrants detained aboard for examination, a course which would have turned its steamers into hospital ships, broken up its sailing schedules and destroyed its business, the defendant continued to pay these bills, leaving the United States to collect in this action at law the bills rendered, but not paid, in the brief interval from August 1 to September 16, 1909.

[2] This leaves us to consider the first cause of action and to inquire whether the act does impose the obligation to pay these expenses upon the steamship companies. Concededly it does not do so expressly, and the United States has to rely upon necessary implication.

Congress has made it perfectly clear in section 19 that in the case of immigrants brought to this country in violation of law the company shall pay "the costs of their maintenance while on land as well as the expense of the return of such aliens." It has gone farther and made the master or owner guilty of a misdemeanor if "he shall make any charge for the return of any such alien or shall take any security from him for the payment of such charge." The plain intent of these stringent provisions is to compel the companies to be vigilant in examining intending passengers before embarkation with a view of refusing such as are excluded by the act. There can, of course, be no inference from these precise provisions that the companies are to pay for the expenses in question, about which nothing at all is said in the act.

The legal fiction that the immigrants were not landed until they had been admitted did not leave the defendant "in charge" of them or

make it liable for their maintenance and care. It only negatived any presumption that, because of actual landing, they had been admitted or that the defendant's obligation to return them if ordered to be deported was at an end.

Section 16 of the act recognizes these considerations in disposing of the custody of the immigrants before admission:

"Sec. 16. (Inspection by immigration officers—on shipboard—at immigrant stations.) That upon the receipt by the immigration officers at any port of arrival of the lists or manifests of incoming aliens provided for in sections twelve, thirteen, and fourteen of this act, it shall be the duty of said officers to go or to send competent assistants to the vessel to which said lists or manifests refer, and there inspect all such aliens, or said immigration officers may order a temporary removal of such aliens for examination at a designated time and place, but such temporary removal shall not be considered a landing, nor shall it relieve the transportation lines, masters, agents, owners, or consignees of the vessel upon which said aliens are brought to any port of the United States from any of the obligations which, in case such aliens remain on board, would, under the provisions of this act, bind the said transportation lines, masters, agents, owners, or consignees: Provided, that where a suitable building is used for the detention and examination of aliens the immigration officials shall there take charge of such aliens, and the transportation companies, masters, agents, owners, and consignees of the vessels bringing such aliens shall be relieved of the responsibility for their detention thereafter until the return of such aliens to their care."

The section holds the companies liable for the detention and maintenance of immigrants landed temporarily for examination at places where they remain in the companies' charge. Then it goes on to provide that, where the government uses a suitable building for detention and examination, the immigration officials shall take charge of them, and the companies shall be relieved of responsibility thereafter for their detention until the immigrants are returned for deportation. The buildings on Ellis Island are just such suitable buildings, erected, indeed, by means of the head money tax of $4 paid by the companies on each alien immigrant as required by the act. So also the state hospitals where immigrants having contagious diseases were at that time sent until they could be removed to Ellis Island for examination were suitable buildings, and the expense so incurred was defrayed by the government out of the same source. We think the immigration officials, and not the defendant, were in the language of the act in charge of the immigrants in question at both places, for all purposes.

This construction appeals to our sense of fairness. The companies are required to pay head money on the passengers they bring here to provide moneys for defraying the expense of regulating immigration under the act and no use of such funds could be more appropriate than to apply them to the expenses of aliens pending examination who are rightfully brought here and are eventually admitted. It is stipulated by the parties that these moneys are more than enough in amount to do so after payment of all other expenses. If Congress had thought it just that the companies should pay these charges, we think it would have said so in express terms, as it did in the case of immigrants brought here in violation of law. It seems to us that the rule adopted by the immigration authorities was not consistent with law and was

oppressive because it compelled the companies to pay in order to escape the alternative of having their steamers turned into hospitals and houses of detention. Such payments were not voluntary. They could not in the nature of things have been resisted.

Judgment affirmed.