## H. KIHI *v.* THE BRITISH STEAMSHIP "WILLESDEN".

### October 31, 1914.

*Maritime lien—Necessaries—Supplies of food furnished alien immigrants pending quarantine:* The fact that a charter party providing for transportation of alien immigrants stipulates that the owners of the carrier, a foreign vessel, shall comply with all the laws, rules, and regulations of the port of destination with reference to immigration and quarantine, is no basis for a maritime lien or suit *in rem* for supplies of food furnished to alien immigrants so transported pending their detention in quarantine on shore at such port but before their admission to the country. Nor is the rule any different by reason of the fact that the master in behalf of the owner of the vessel requested the furnishing of such supplies.

*In Admiralty:*    Libel *in rem* for supplies.

*E. C. Peters* for libelant.

*L. J. Warren (Smith, Warren, Hemenway & Sutton* with him) for libellee.

CLEMONS, J.    The exceptions to the libel having been sustained without prejudice to amendment, ante p. 407, the libelant filed an amended libel in which he added to the original libel two counts.

The first of the new counts (third cause of action) shows a charter party between the Territorial board of immigration as charterers and the Britain Steamship Company as owners, which provided that the steamship Willesden would proceed to certain ports and embark certain alien passengers destined for Honolulu.    The reason for bringing in the charter party appears in its special provision:

"That said Owners would comply with all the laws, rules and regulations of the United States with reference to immigration, quarantine and the carriage of passengers by sea that were in force in May, 1911, and that said Owners would in every way provide for the passengers according to the United States Passenger Act of 1882, as amended prior to May, 1911."

It is then alleged that the vessel took on these passengers and arrived at Honolulu with them on December 3, 1911, when they applied for admission into the United States, and that the master of the vessel "acting for and on behalf of the owner thereof," requested the libelant that, pending their examination as to eligibility to be admitted, the libelant should furnish them with food; whereupon the libelant accordingly, and on the credit of the vessel and for its account, use and benefit, furnished the meals alleged.

The second of the new counts (fourth cause of action) is a modification of the new count just set forth (still rely-

ing on the charter party) in reciting that the meals were furnished by the libelant "under the direction of the inspector in charge at the port of Honolulu, upon the special instance and request of the master of said steamship Willesden acting for and on behalf of the owner thereof, but upon the credit of said steamship and for its account, use and benefit."

Exceptions to the amended libel raise two new grounds of objection: (1) The want of any legal right of expectation on the part of the libelant to look to the vessel or extend credit to the vessel, as the charter party laid no foundation for extending such credit. (2) The fact that the charter party itself did not open the "necessity door" and make the supplies a legal necessity of the voyage, by virtue of which the master had any authority to order the meals on the credit of the vessel.

In arguing these exceptions, counsel for the libellee "challenge any possible claim of authority on the part of the inspector in charge, acting either on his own responsibility or at the instance (or as an agent) of the master for the owners, to create any legal liability against the owners of the vessel or to authorize a proceeding against the vessel *in rem.*" Brief of claimant, p. 3.

It is not perceived that the case is strengthened by the new allegations showing the charter party stipulation. Even if the doubtful proposition be conceded, that the charter party is such a contract as would give the libelant a beneficial interest entitling him to sue thereon in his own name (see 18 Fed. 523, note by Francis Wharton; 15 Enc. Pl. & Pr. 509-517; Abbott's Justice and the Modern Law, 38 et seq.), nevertheless the fact remains that this proceeding as one *in rem* must have a right of lien for its support and such right must depend upon the furnished meals' being necessaries within the narrow meaning of that word in the law of maritime liens. Our former opinion, ante,

p. 408, holds that such supplies, furnished under the circumstances here, are not necessaries.

As supporting that opinion, the following authorities may be added to those therein cited: *The Plymouth Rock,* 19 Fed. Cas. 897, 898, (Benedict, J.) suggesting as a test, whether the article supplied "forms part of the actual and reasonable outfit for a vessel for the business in which she is engaged"; *Hubbard v. Roach,* 2 Fed. 393, 394-395, suggesting as a test, whether the things supplied "pertain to the navigation of the vessel, and are directly incidental to and connected with her navigation, that is, those things which directly aid in keeping her in motion for the purpose of receiving, carrying and delivering cargoes", or (to apply the principle to passenger carriers) of embarking, carrying and disembarking passengers.

And the special charter party stipulation for compliance with the law, above quoted from the third cause of action, adds nothing to the libelant's case. Nor is anything gained by the new allegations that the furnished meals were requested by the master of the vessel or were furnished "under the direction of the inspector of immigration at the special instance of the master". The facts stated would, at most, support no more than a suit *in personam* against the owner of the vessel,—even conceding the authority of the master to order the furnishing of meals to immigrants detained on shore under quarantine regulations, meals which neither the immigration laws nor the Passenger Act (referred to in the charter party), nor any statute which we have been able to find, required the vessel or its owner to furnish. These things are not such supplies as "a prudent owner if present" would provide. See our former opinion, ante, p. 414, also 26 Cyc. 764 and n. 99.

Further discussion seems unnecessary. See, however, *U. S. v. Holland-American Line,* 212 Fed. 116, affirming the decision, 205 Fed. 943, followed in our former opinion herein.

Let the exceptions to the amended libel be sustained.