Hat, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit brought by the plaintiff to recover from the defendants for the actual cost and reasonable value of the maintenance and medical care and treatment furnished by the defendants to a number of aliens who had been brought by the plaintiff to the United States on its steamers. These aliens at the time of their arrival were found to be suffering with certain diseases. Because they were suffering with these diseases it was not practicable for the immigration officials to examine them at the time of their respective arrivals for the purpose of ascertaining whether or not they were entitled to land. The immigration officials decided that it was necessary to hold these aliens for such examination until they had recovered from the diseases with which they were suffering. Those suffering with contagious diseases were removed from the vessel under order of the medical officers of the immigration service to public hospitals in or near New York City under contract arrangement made by the officers of the United States, whereby the hospitals charged the United States at agreed rates for the treatment, care, and maintenance of said aliens. When these aliens were discharged from these hospitals they were taken to Ellis Island, the immigrant station for the port of New York, for examination as to their right to land, and all of these aliens for whose treatment, care, and maintenance the defendants exacted the sum now in suit were admitted.
Other aliens afflicted with other than contagious diseases were, upon arrival, removed from the vessels to Ellis Island for examination, and upon being examined there by medical officers, they were found to be afflicted with diseases which necessitated treatment before they could be permitted to land, and they were placed in the Ellis Island Hospital for treatment. Upon being discharged therefrom they were examined by the immigration officer and were all admitted.
The aliens for whom these charges were incurred were brought by the defendants to the port of New York between May 27,1908, and December 9, 1918.
It is claimed by the plaintiff that the defendants were not authorized by law to compel it to pay the sum in suit for *529 tbe treatment, care, and maintenance of aliens in hospitals where they were being treated prior to their landing and being admitted to the United States. They base this contention upon the ground that the statute contains no provision which either expressly or by implication imposes upon the plaintiff the obligation of paying for these hospital expenses in cases of aliens who are after examination admitted to the United States. The statute which controls this case is the act of February 20, 1907; after a careful examination it is not perceived that there is any specific authority in that statute which would require the plaintiff to pay these charges, nor can it be implied from the language of the statute that Congress intended that these charges should be paid by the plaintiff.
Section 16 of the act of February 20, 1907, 34 Stat., 898, 90S, is as follows :
“That upon the receipt by the immigration officers at any port of arrival of the lists or manifests of incoming aliens provided for in sections twelve, thirteen, and fourteen of this act, it shall be the duty of said officers to go or to send competent assistants to the vessel to which said lists or manifests refer, and there inspect all such aliens, or said immigration officers may order a temporary removal of such aliens for examination at a designated time and place, but such temporary removal shall not be considered a landing, nor shall it relieve the transportation lines, masters, agents, owners, or consignees of the vessel upon which said aliens are brought to any port of the United States from any of the obligations which, in case such aliens remain on board, would, under the provisions of this act, bind the said transportation lines, masters, agents, owners, or consignees: Provided, That where a suitable building is used for the detention and examination of aliens the immigration officials shall there take charge of such aliens, and the transportation companies, masters, agents, owners, and consignees of the vessels bringing such aliens shall be relieved of the responsibility for their detention thereafter until the return of such aliens to their care.”
It will be seen from the reading of this section that the steamship companies are held liable for the detention and maintenance of aliens landed temporarily for examination at places where they remain in the companies’ charge; but *530 in tbe proviso to tbe section it is provided where'tbe Government uses a suitable building for tbe detention and examination of aliens the immigration officials shall there take charge of such aliens and the companies shall be relieved of the responsibility for their detention thereafter until the return of such aliens to their care.
Judge Ward in the case of the United States v. Holland America Line, 212 Fed., 116, 119, says:
“ The buildings on Ellis Island are just such suitable buildings, erected, indeed, by the means of the head money tax of $i paid by the companies on each alien immigrant as required by the act. So also the State hospitals where immigrants having contagious diseases were at that time sent until they could be removed to Ellis Island for examination were suitable buildings, and the expense so incurred was defrayed by the Government out of the same source. We- think the immigration officials, and not the defendant, were, in the language of the act, in charge of the immigrants in question at both places for all purposes.”
Further, the language of the act is that where suitable buildings are used for “ detention and examination ” the immigration officials shall take charge of such aliens. The word “ examination ” is significant in this connection for the reason that the examination contemplated by the act could not take place until the aliens who were suffering with disease had been treated, cared for, and maintained, and it seems to the court that the act contemplated that the Government should pay charges which led up to the examination which was to take place before the alien could be admitted, and with which the plaintiff had nothing to do, after the alien had been taken from its custody and placed in that of the defendants. It would seem that if Congress had intended to require from the plaintiff the payment of these charges it would have said so in plain terms, for the same act specified with great care and particularity what obligations and penalties the steamship companies are liable for. In sections 19 and 20 of the act these obligations and penalties are set out, and the omission from these obligations of these hospital charges is a pregnant circumstance going to show that it was not intended by Congress to impose them in that act; for by the act of October 22,1913 this obligation was imposed upon *531 the steamship companies. Such a law would not have been enacted if Congress had believed that it was already a law. It is, however, contended by the defendants that this act has been given a practical construction by the immigration authorities by the adoption of rules and regulations which impose upon the plaintiff the liability of paying the charges under consideration.
By section 22 of the act of 1907, the Commissioner General of Immigration is authorized to establish rules and regulations not inconsistent with law. He can not make rules and regulations which are inconsistent with law, nor by such rules and regulations, impose a liability which is not imposed by the act itself. If such a regulation imposing a liability is in the power of the officer it must have its source in the act under which the regulation is promulgated. Unless such power is conferred by the act the regulation becomes legislation by an administrative officer. It is a well-established principle that legislation can not be exercised under the guise of a regulation. This court has repeatedly passed upon the effect of regulations of the executive departments. It has uniformly held that such regulations could only have the force and effect of law when they are not in contravention to existing law. Illinois Central Railroad Company v. United States, 52 C. Cls., 53, and cases there cited.
As the act under consideration does not impose the obligation upon the plaintiff of paying these charges no rule or regulation could have that effect.
As to the claim of the defendants that the plaintiff bound itself by contract to pay these charges, it is only necessary to say that from the evidence it appears that the plaintiffs were coerced into the making of that contract by a threat of the defendants which if carried into effect would have destroyed the plaintiff’s business. In United States v. Holland America Line, supra, the court said:
“ It seems to us that the rule adopted by the immigration authorities was not consistent with law and was oppressive because it compelled the companies to pay in order to escape the alternative of having their steamers turned into hospitals and houses of detention. Such payments were not voluntary. They could not in the nature of things have been resisted.”
*532 For the foregoing reasons judgment will be entered in favor of the plaintiff for the sum of $16,993.50, and it is so ordered.
Downey, Judge; Barney, Judge; Booth, Judge; and Campbell, Chief Justice, concur.